SECURITIES AND EXCHANGE
COMMISSION Plaintiff,

v.

Jorge Eduardo BALLESTEROS FRAN-
CO, Juan Pablo Ballesteros Gutierrez
Cardinal Trust, Sagitton Limited,
Gianni Trust, Gianni Enterprises
Limited, and Casford Limited Defen-
dants.

No. 01 CIV. 3872(JGK).

United States District Court,
S.D. New York.

March 28, 2003.

W. Grime, Securities and Exchange Commission, Washington, DC, for S.E.C.

Theodore V. Wells, Jr., Paul, Weiss, Rifkin, Wharton & Garrison, Alex Young K OH, Paul Weiss Rifkind Wharton & Garrison, New York, NY, for Jorge Eduardo Ballestros Franco.

Robert M. Romano, Latham & Watkins, New York, NY, for Jorge Eduardo Ballestros Franco, Sagitton Ltd., Cardinal Trust.

Paul A. Leder, Richards, Spears, Kibbe & Orbe, Washington, DC, for Jose Luis Franco.

Andrew J. Levander, Swidler, Berlin, Shereff, Friedman, LLP, New York, NY, for Jose Luis Ballesteros Gutierrez, Interconsulting Ltd.

Michael J. Grudberg, Paul Shechtman, Stillman & Freidman, PC, New York, NY, for Juan Pablo Ballesteros Gutierrez, Casford Ltd.

Lewis J. Liman, David R. Lurie, Wilmer, Cutler & Pickering, New York, NY, for Alejandro Ballesteros Gutierrez.

Laura H. Stasior, John Sand Siffert, Lankler, Siffert & Wohl, LLP, New York, NY, for Ricardo Ballesteros Gutierrez.

J. Bradly Bennett, Baker, Botts, LLP, Washington, DC, for Eugenio Minvielle Zamudio, Carlos Minvielle Lagos.

Colleen P. Mahoney, Skaden, Arps, Slate, Meagher & Flom, LLP, Washington, DC, for Gianni Enterprises Ltd., Gianni Trust.

### *OPINION AND ORDER*

KOELTL, District Judge.

This is an action brought by the plaintiff, the Securities and Exchange Commission ("SEC") alleging violations of the federal securities laws arising out of the purchase of Nalco Chemical Company ("Nalco") common stock by several individuals and

Paul R. Berger, Kenneth L. Miller, Nancy J. Grunberg, Glenn S. Genty, Richard

entities associated with Jose Luis Balleste-ros Franco ("Jose Ballesteros"), a now deceased member of Nalco's Board of Directors. The SEC asserts claims against those individuals and entities to whom Jose Ballesteros allegedly passed on material nonpublic information regarding Nalco, namely (1) family members, including his brother, Jorge Eduardo Ballesteros Franco ("Jorge Ballesteros"), and his son Juan Pablo Ballesteros Gutierrez ("Juan Ballesteros") (collectively the "Individual Defendants"); (2) several trusts, whose assets were used to purchase Nalco stock, including the Cardinal Trust, settled by Jorge Ballesteros's wife, Illeana Zavala de Ballesteros, and the Gianni Trust, settled by Jorge Ballesteros's mother, Josefina Franco de Ballesteros; (3) three private companies, including Sagitton Limited, an investment company whose stock is entirely owned by the Cardinal Trust, Gianni Enterprises Limited, an investment company whose stock is entirely owned by the Gianni Trust, and Casford Limited, a company owned by Juan Ballesteros.

The original complaint in this action named nine additional individual defendants, including various business associates and other family members of Jose Ballesteros, who have all settled their claims with the SEC, and have consented to entry of a final judgment of permanent injunction without admitting or denying the allegations in the SEC's original complaint. Initially, Cardinal Trust, Sagitton Limited, Gianni Trust, and Gianni Enterprises Limited (collectively "the Trust defendants") moved to dismiss the original complaint pursuant to Fed.R.Civ.P. 12(b)(6). By Order dated April 26, 2002, the Trust defendants' motions to dismiss were denied without prejudice as moot, and the plaintiff was permitted to file an amended complaint.[1]

Thereafter, an Amended Complaint (the "Complaint") was filed asserting (1) violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, ("Count 1"); and (2) violations of § 14(e) of the Exchange Act, 15 U.S.C. § 78n(e) and Rule 14e–3 promulgated thereunder, 17 C.F.R. § 240.14e–3, ("Count 2"). The SEC seeks a permanent injunction prohibiting the Trust defendants and the Individual defendants from violating these securities laws, and also seeks civil monetary penalties from these parties, pursuant to 15 U.S.C. § 78u–1.

The Trust defendants move to dismiss both Count 1 and Count 2 of the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) arguing, among other things, that the Complaint fails adequately to state a violation of § 10(b), Rule 10b–5, § 14(e) or Rule 14e–3 because there is no allegation that any Trust defendant had the requisite state of mind required under the securities laws. The Trust defendants also argue that there is no basis for holding a trust liable under the securities laws for the illegal conduct of an individual, such as Jorge Ballesteros, who was associated with a trust entity.

### I.

On a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), the allegations in the Amended Complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences are drawn in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). The Court's function on a motion to

---

**1.** Both Jorge Ballesteros and Juan Ballesteros are the subject of criminal prosecutions in connection with the sales of Nalco stock. (Compl.¶ 9–10.)

dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendant's motion to dismiss should only be granted if it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon,* 147 F.3d at 188; *Goldman,* 754 F.2d at 1065.

Accordingly, the following facts in the Complaint are, for the purposes of this motion, accepted as true. On June 28, 1999 Nalco announced along with a French Company, Suez Lyonnaise des Eaux, S.A. ("Suez"), that a Suez subsidiary would be making a tender offer to purchase all outstanding Nalco stock at a substantial premium. (Compl.¶ 2.) Jose Ballesteros, who was at that time a member of Nalco's Board of Directors, obtained this information, which was not public, and communicated it to his brother Jorge Ballesteros. (Compl.¶¶ 2, 33.) Jorge Ballesteros, through the Gianni Trust and the Cardinal Trust and with their assets over which he held considerable influence and control, purchased at least 216,300 Nalco shares for approximately $7.2 million. (Compl.¶¶ 2, 55.) This transaction netted Jorge and Jose Ballesteros illegal profits exceeding $3.2 million dollars. (Compl.¶ 2.) After the death of Jose Ballesteros, his estate paid disgorgement to the SEC amounting to $ 3,380,283.77, representing the profits by all members of the Ballesteros family, including all of the remaining defendants. (Compl.¶ 5.)

Cardinal Trust had as its primary beneficiary, Ileana Zavala de Ballesteros, Jorge Ballesteros' wife. (Compl.¶ 11.) In October, 1998 the same day this trust was formed she delegated to Jorge Ballesteros, via a Letter of Wishes, the "authority, acting alone, to issue investment instructions to the Trustees" of the Cardinal Trust. (Compl.¶ 11.) This Letter of Wishes also provided that Jorge Ballesteros had the power to veto any instructions of his wife concerning the distribution of any of the trust's assets, and that the trust benefits would be maintained for his benefit jointly with his wife during her lifetime and solely for his benefit after her death. (Compl.¶ 11.) Jorge Ballesteros' wife never tried to exercise or actually exercised any authority, as settlor or primary beneficiary, to make investment decisions on behalf of Cardinal Trust. (Compl.¶ 63.) Through his control of Cardinal Trust, Jorge Ballesteros was also able to direct the investments of Sagitton Limited, a private investment company, all of whose common stock was owned by Cardinal Trust. (Compl.¶ 13.)

Similarly, Gianni Trust had as its primary beneficiary, Josefina Franco de Ballesteros, Jorge Ballesteros' mother. (Compl.¶ 14.) In January, 1998 on the same day the trust was formed she appointed Jorge Ballesteros, via a Letter of Wishes, as the sole investment advisor of Gianni Trust. (Compl.¶ 14.) The Letter of Wishes also provided that Jorge Ballesteros had the authority to issue investment instructions to the Gianni Trust trustees, so long as the trustees followed the instructions of the primary beneficiary of the trust if there were to be conflicting instructions. (Compl.¶ 14.) The Letter of Wishes also provided that the trust's primary beneficiary was to be Jorge Ballesteros' mother during her lifetime, and that trust assets were to be distributed to Jorge Ballesteros and his four siblings, or their spouses, upon his mother's death. (Compl.¶ 14.) Jorge Ballesteros' mother never tried to exercise or actually exercised any authority, as settlor or primary

beneficiary, to make investment decisions on behalf of Cardinal Trust. (Compl.¶ 64.) Through his control of Gianni Trust, Jorge Ballesteros was able to able to direct the investments of Gianni Enterprises Limited, a private investment company all of whose stock was owned by the Gianni Trust. (Compl.¶ 16.)

From the time that Cardinal Trust and Gianni Trust were established, Jorge Ballesteros dominated and controlled their investment activities as well as those of Sagitton and Gianni Enterprises Limited. (Compl.¶ 55.) No other individual ever gave instructions on how to invest the trust assets of the Gianni Trust or Cardinal Trust except Jorge Ballesteros. (Compl.¶ 56.) Any investment decision was solely based on the determinations and instructions of Jorge Ballesteros. (Compl.¶ 56.) During the relevant time, Cardinal Trust and Gianni Trust were administered by BT Trustees (Jersey Ltd.) with nominee directors it supplied and the trustee was Bankers Trust AG of Zurich, Switzerland. (Compl.¶¶ 12, 15.) Similarly, during the relevant period Sagitton Limited and Gianni Enterprises Limited were administrated by BT Trustees (Jersey) Ltd. with nominee officers and directors it supplied. (Compl.¶¶ 13, 16.) No investment decision was ever made by the officers and/or directors of Cardinal Trust, Gianni Trust, Sagitton and Gianni Enterprises, or by Bankers Trust AG or BT Trustees (Jersey) Ltd. (Compl.¶¶ 56, 57.)

As a member of Nalco's Board of Directors, Jose Ballesteros was aware of Nalco's prohibition on the trading of Nalco stock by directors who are in possession of material nonpublic information. (Compl.¶¶ 26–27.) The information regarding the proposed tender offer by Suez was material, nonpublic information disclosed to Jose Ballesteros and other directors at a series of Nalco board meetings, where they were also reminded of

Nalco's policy on stock trading by directors. (Compl.¶¶ 29, 33.) Specifically, at a June 5, 1999 board meeting Nalco directors were advised of a blackout period then in effect in which they were not to trade Nalco stock. (Compl.¶ 33.) At a June 17, 1999 Nalco board meeting, Jose Ballesteros was advised that the transaction with Suez would likely be finalized sometime between June 20 and 27, at which time the Nalco board would hold a vote. (Compl.¶ 36.)

After this board meeting, and between June 18 and June 24, Jose Ballesteros, along with his brother, Jorge, to whom Jose had conveyed the material inside information about the Suez transaction, used the Gianni Trust and the Cardinal Trust entities, along with other offshore trusts which they controlled, to purchase some 216,300 shares of Nalco Stock. (Compl.¶ 37.) These transactions were effectuated by Jose Ballesteros passing investment instructions, based on his material nonpublic information, to various family and business associates, including his brother Jorge Ballesteros, who were associated with the offshore trusts and other controlled entities and who consummated the purchases. (Compl.¶¶ 38–47.) In the transactions involving the Trust defendants' purchase and sale of the Nalco stock, the Trust defendants treated Jorge Ballesteros as the trust settlor, rather than a mere investment advisor, in making the decision to use trust or company assets to execute the stock sales. (Compl.¶¶ 60–61.) Sagitton purchased $700,000 worth of Nalco stock and Gianni Enterprises Limited purchased $5,000,000 of the stock, on the basis of written instructions given by Jorge Ballesteros. (Compl.¶¶ 60–61.) After the Suez transaction became public, those shares were sold, resulting in a profit of $ 3,227,446.04 for Jose and Jorge Ballesteros. (Compl.¶¶ 37, 51–54.)

Jose Ballesteros knowingly or recklessly caused trades of Nalco stock to be executed on the basis of material nonpublic inside information, and consequently violated his fiduciary duty owed to Nalco not to trade its stock on the basis of such information. (Compl.¶¶ 81–82.) Jorge Ballesteros, in receiving information from his brother about Nalco, knew or was reckless in not knowing that the information he received was nonpublic and that its use or disclosure was a violation of a fiduciary duty owed to Nalco. (Compl.¶ 83.) Jorge Ballesteros' subsequent use of the Trust defendants to execute transactions of Nalco stock, through his "domination and control" of their investment activities, caused the Trust defendants to violate those fiduciary duties owed to Nalco. (Compl.¶ 84.)

The SEC also alleges that given his relationship with and control over the Trust defendants, Jorge Ballesteros' knowledge and actions are appropriately imputed to the Trust defendants, and make them liable for violations of Section 10(b) of the Exchange Act and Rule 10b–5. (Compl.¶¶ 65, 86.) Additionally, by trading Nalco stock on the basis of material nonpublic information that was related to a tender offer, with knowledge of its nonpublic nature, the Trust defendants are also liable for violations of Section 14(e) of the Exchange Act and Rule 14e–3. (Comp. ¶ 90.)

## II.

### A.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange-

. . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Similarly, Rule 10b–5, promulgated under § 10(b) and codified at 17 C.F.R. § 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

It is well-established that Rule 10b–5 may be invoked in the context of claims of insider-trading. *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 168–69 (2d Cir.1999) (collecting cases); *S.E.C. v. Alexander,* 160 F.Supp.2d 642, 650 (S.D.N.Y.2001). "Rule 10b–5 prohibits a party from trading on undisclosed material non-public information in certain circumstances." *Simon,* 186 F.3d at 169. A corporate insider who trades on the

basis of material, nonpublic information without disclosing that information violates § 10(b) and Rule 10b–5. *United States v. O'Hagan,* 521 U.S. 642, 651–52, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997); *United States v. Chestman,* 947 F.2d 551, 564–65 (2d Cir.1991) (en banc) This liability is

> premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction. Application of a duty to disclose prior to trading guarantees that corporate insiders, who have an obligation to place the shareholder's welfare before their own, will not benefit personally through the fraudulent use of material, nonpublic information.

*Chiarella v. United States,* 445 U.S. 222, 230, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). As the Supreme Court explained, "[t]he classical theory applies not only to officers, directors, and the other permanent insiders of a corporation, but also to attorneys, accountants, consultants, and others who temporarily become fiduciaries of a corporation." *O'Hagan,* 521 U.S. at 652, 117 S.Ct. 2199. Rule 10b–5, thus, prohibits an insider, who has a fiduciary duty to a corporate entity, from using material nonpublic information to the insider's advantage in order to make secret profits. *See Dirks v. S.E.C.,* 463 U.S. 646, 654, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); *S.E.C. v. Gonzalez de Castilla,* 145 F.Supp.2d 402, 412 (S.D.N.Y.2001).

■ The ambit of Rule 10b–5's prohibition on insider trading extends beyond the insiders who themselves have a fiduciary duty, but also to the "tippee" recipients of insider information from those who are insiders. The duty of a tippee not to profit from insider information "aris[es] from his role as a participant after the fact in the insider's breach of a fiduciary duty." *Chiarella,* 445 U.S. at 230 n. 12, 100 S.Ct. 1108. An individual is liable as a tippee under Rule 10b–5 if (1) the tipper pos-

sessed material nonpublic information regarding a publicly trade company; (2) the tipper disclosed this information to the tippee; (3) the tippee traded in securities while in possession of the information; (4) the tippee knew or should have known that the tipper had violated a fiduciary duty by providing the information to the tippee; and (5) the tippee benefitted from the disclosure of the information by the tipper. *S.E.C. v. Warde,* 151 F.3d 42, 47 (2d Cir. 1998); *Alexander,* 160 F.Supp.2d at 650–51.

■ Similarly, § 14(e) and Rule 14(e)–3 prohibit the disclosure of material, nonpublic information in the context of a tender offer. Section 14(e), provides in relevant part,

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

15 U.S.C. § 78n(e). Rule 14e–3, provides in relevant part,

> (a) If any person has taken a substantial step or steps to commence, or has commenced, a tender offer (the "offering person"), it shall constitute a fraudulent, deceptive or manipulative act or practice within the meaning of section 14(e) of the Act for any other person who is in possession of material information relating to such tender offer which information he knows or has reason to know is nonpublic and which he knows or has reason to know has been acquired directly or indirectly from:
>
> > (1) The offering person,

(2) The issuer of the securities sought or to be sought by such tender offer, or

(3) Any officer, director, partner or employee or any other person acting on behalf of the offering person or such issuer, to purchase or sell or cause to be purchased or sold any of such securities or any securities convertible into or exchangeable for any such securities or any option or right to obtain or to dispose of any of the foregoing securities, unless within a reasonable time prior to any ·purchase or sale such information and its source are publically disclosed by press release or otherwise.

&ast; &ast; &ast; &ast; &ast; &ast;

(d)(1) As a means reasonably designed to prevent fraudulent, deceptive or manipulative acts or practices within the meaning of section 14(e) of the Act, it shall be unlawful for any person described in paragraph (d)(2) of this section to communicate material, nonpublic information relating to a tender offer to any other person under circumstances in which it is reasonably foreseeable that such communication is likely to result in a violation of this section.

17 C.F.R. § 240.14e–3(a),(d)(1). The persons covered by Rule 14e–3(d)(1) include the officers, directors, partners, employees, or advisors of both the offering person and the issuer of the securities. *See* 17 C.F.R. § 240.14e–3(d)(2). To establish liability under Rule 14e–3(a), an individual must have traded securities on "the basis of material nonpublic information concerning a pending tender offer that he knows, or has reason to know, had been acquired directly or indirectly from an insider of an offeror or issuer or someone working on their behalf." *Chestman*, 947 F.2d at 557; *Gonzalez de Castilla*, 145 F.Supp.2d at 414. However, unlike Rule 10b–5 and

§ 10(b), an individual need not have breached a fiduciary duty to be liable under Rule 14e–3 and § 14(e). *See Chestman*, 947 F.2d at 557 (noting that Rule 14e–3 creates a duty to disclose "without regard to whether the trader owes a pre-existing fiduciary duty to respect the confidentiality of the information"); *Gonzalez de Castilla*, 145 F.Supp.2d at 414. As is the case with Rule 10b–5 liability, a tippee may be liable for trades in connection with a tender offer under 14e–3 if the tippee received information from a tipper that he knew or should have known was obtained in violation of § 14(e) and Rule 14e–3. *See Alexander*, 160 F.Supp.2d at 651.

■ In this case, the SEC alleges that Jose Ballesteros was a primary violator of § 10(b) and Rule 10b–5 and § 14(e) and Rule 14e–3 because he was an insider at Nalco and used nonpublic information to effectuate trades of Nalco stock. (*See* Compl. ¶ 81–82.) The Complaint goes on to allege that Jorge Ballesteros is liable under these provisions as a tippee, who received insider information from Jose, his brother and then traded Nalco securities with knowledge, or in reckless disregard of the fact, that the information he received was material nonpublic information obtained through a breach of a fiduciary duty. (*See* Compl. ¶ 83.) The SEC seeks to impute Jorge Ballesteros' knowledge to the Trust defendants, and thereby hold the Trust defendants liable for violations of § 10(b), Rule 10b–5, § 14(e) and Rule 14e–3. (Compl.¶ 65, 84, 89–90.) The issue for the purposes of this motion is whether § 10(b) and Rule 10b–5 and § 14(e) and Rule 14e–3 liability extends to trust entities that were controlled and dominated by individuals who themselves are allegedly liable for violations of those securities laws.[2]

---

**2.** It is unnecessary to determine whether Jorge Ballesteros had the requisite state of mind under § 10(b), Rule 10b–5, § 14(e) and

Rule 14e–3 because the Trust defendants do not dispute, for the purposes of this motion, that Jorge Ballesteros had such a state of

### B.

The Amended Complaint alleges that the Trust defendants were controlled and dominated by Jorge Ballesteros to such a large extent that the illicit activities and knowledge of Jorge Ballesteros should be imputed to them.[3] The Trust defendants do not argue that the allegations in the Amended Complaint are insufficient to hold Jorge Ballesteros liable for insider trading. Instead they argue that there is simply no basis for holding trust entities liable under the securities laws for violations that were perpetrated by an individual merely associated with those entities. They argue that there is no case, or theory of liability for that matter, that holds that the Trust defendants can be liable for the illegal activity of Jorge Ballesteros under the relevant statutes and rules.

These arguments lack merit. While it is true that neither party has found a case in which a trust was held liable for insider trading under circumstances similar to this case, the allegations in the Amended Complaint are sufficient to survive the Trust defendants' motion to dismiss.[4]

The Court of Appeals for the Second Circuit has held that a person's knowledge can be attributed to a corporation in connection with actions which that person through his control causes the corporation to take. Hence, in *S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972), the Court of Appeals found that two corporate defendants, Glendale, Inc., and Atlantic Services, Inc., were liable for violations of the securities laws, including § 10(b) and Rule 10b–5, because they were "corporate embodiments" of an individual defendant, "and his awareness of the securities law violations [is] imputed to them." *Id.* at 1089 n. 3. The Court also noted that the individual's knowledge "is imputed to

---

mind. Generally, for a defendant to be liable under either § 10(b) or Rule 10b–5 for insider trading, the plaintiff must allege that the defendant acted with scienter. *Gonzalez de Castilla*, 145 F.Supp.2d at 413; *Alexander*, 160 F.Supp.2d at 650. In the context of § 10(b) and Rule 10b–5, scienter "means intent to deceive, manipulate, or defraud, or at least knowing misconduct." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir.1996) (citations omitted); *see also S.E.C. v. Todt*, No. 98 Cir. 3980, 2000 WL 223836, at *9 (S.D.N.Y. Feb.25, 2000) *aff'd*, 7 Fed. Appx. 98, 2001 WL 345151 (2d Cir.2001). Scienter may be inferred from proof of "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" or from proof that a defendant had "both motive and opportunity to commit fraud." *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir.2000); *see also Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir.2001). For liability to be imposed under § 14(e) and Rule 14e–3, the Court of Appeals has also found that scienter is a necessary element. *See Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 961 (2d Cir.1987) ("To prevail under § 14(e) ... a plaintiff must plead and prove 'an intent to defraud' 'knowledge of falsity' or a 'reckless disregard for the truth' "). However, for the purposes of this motion, the question is not whether the requisite state of mind under the statutes is satisfied, but whether the state of mind of Jorge Ballesteros can be imputed to the Trust defendants.

3. The SEC acknowledged at oral argument that the theory of liability of the Amended Complaint is not based upon traditional notions of alter-ego, agency, or veil piercing liability. According to the SEC, the theory of liability is best described as "controlled person" liability.

4. The parties spend considerable effort debating the relevance of several cases involving the liability of trusts under the securities laws. *See, e.g., U.S. S.E.C. v. Infinity Group Co.*, 212 F.3d 180 (3d Cir.2000). Ultimately, however, none of these cases support the position of either the SEC or the Trust defendants, because *they do not squarely address the question* of whether under the federal securities laws the illegal acts and knowledge of an individual, who is not a trustee, may be imputed to a trust entity, which is not alleged to have been a sham or the alter ego of an individual, but which is alleged to be dominated and controlled by that individual.

the corporation which he controlled ..." *Id.* at 1096 n. 17. The Court of Appeals cited *S.E.C. v. North Am. Research and Development Corp.*, 424 F.2d 63 (2d Cir. 1970) where the Court upheld the liability of a corporation for violations of the securities laws including § 10(b) and Rule 10b–5 where "the corporation was little more than the personification" of an individual defendant and others. *Id.* at 79.

This principle is consistent with the self-evident proposition that a corporation can act only through the actions of natural persons and that the actions of its agents, acting within the scope of their agency, are attributed to the corporation. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (liability of bank for violations of § 10(b) and Rule 10b–5 is co-extensive with that of its employees who devised a scheme to defraud); *S.E.C. v. Lum's Inc.*, 365 F.Supp. 1046, 1061 (S.D.N.Y.1973) (noting "it is difficult to conceive of a corporation acting in any other way than by its managing officers and directors"); *Am. Gen. Ins. Co. v. Equitable Gen. Corp.*, 493 F.Supp. 721, 747 (E.D.Va.1980)(noting that "a corporate entity ... can act only through its officers and duly authorized agents").

While the Trust defendants argue that trust entities cannot be held liable for securities fraud, they provide no persuasive reason to explain why trusts are to be treated differently from corporations, es-

tates, or other entities that have been held liable under Rule 10b–5 and Rule 14e–3 based on the activities of individuals who dominate or control those entities. Trusts, like corporations, must make their decisions through individuals. *See S.E.C. v. Moskowitz*, No. 97 Civ. 7174 (HB), 1998 WL 524903, at *4 (S.D.N.Y. Aug.20, 1998). And where an individual so dominates or controls the activities of some entity such as the trust, the entity may also be held responsible for the same acts committed by the individual. *See, e.g., id.*, 1998 WL 524903, at *4.[5]

In this case it is alleged that the Trust defendants were dominated by Jorge Ballesteros and did his bidding to violate the securities laws and thereby to obtain substantial profits for the trusts. The Amended Complaint alleges, based on the theory of tippee liability, that Jorge Ballesteros knowingly violated Rule 10b–5 and Rule 14e–3. Jorge Ballesteros' activities and his relationship with the Trust defendants indicates that the Trust defendants were controlled and dominated by Jorge Ballesteros. Specifically, it is alleged, among other things, that Cardinal Trust and Gianni Trust were established for the benefit of Jorge's close relatives, that Jorge was the only individual to ever recommend investment instructions to the trusts, that the trusts never declined to follow Jorge's investment instructions, and that Jorge was either the primary, or secondary, beneficiary of these trust assets.[6] (Compl.¶¶ 11, 13, 14, 63, 64.) Moreover,

---

**5.** Finding that a corporation or a trust's liability is co-extensive with that of an individual is not a theory of liability of aiding and abetting the securities fraud by another. Aiding and abetting cannot be a basis for finding a violation of § 10(b) and Rule 10b–5, and it must be alleged that an individual or entity itself violated the provision. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191–92, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994); *Scone Investments, L.P. v. Am. Third Market Corp.*, No. 97 Civ. 3802 (SAS), 1998 WL 205338, at *6–*7

(S.D.N.Y. Apr.28, 1998). In this case, the SEC has alleged, not that the Trust defendants aided Jorge Ballesteros' illegal activities, but that the Trust defendants themselves violated the statutes and rules.

**6.** The Trust Defendants assertion, at oral argument, that Jorge Ballesteros was merely an "investment advisor" who merely gave investment recommendations to the Gianni Trust and Cardinal Trust is not what is alleged in the Amended Complaint. The Amended Complaint alleges, and it must be taken as true for this motion, that Jorge Ballesteros was treat-

Jorge Ballesteros used the assets of Cardinal Trust and Gianni Trust, and their wholly owned investment companies, to effectuate the trades and to generate illegal profits. (Compl. ¶¶ 55–65.) It could be argued based on the allegations in the Complaint that for the purposes of the illegal transactions, the Trust defendants had no autonomous and separate existence outside of Jorge Ballesteros. Under these circumstances, it cannot be said either that to impute the knowledge of Jorge Ballesteros to the Trust defendants would be improper as a matter of law or that the Trust defendants may not be independently liable for violations of the relevant statutes and

rules.[7] The Trust defendants stand in the same position as those corporations that have been held liable for securities fraud based on the knowledge attributed to them from those who controlled them. At this stage of the litigation, the SEC has alleged sufficient facts to warrant imputing the knowledge and acts of Jorge Ballesteros to the Trust defendants, and to state a claim for the violation of the relevant statutes and rules.[8] See Moskowitz, at *4 (denying defendant's motion to dismiss and finding that trust could be held independently liable for securities fraud for illegal activity of trustee perpetrated through trust funds).[9]

ed as the settlor of the trusts, that his investment decisions were never questioned, and that at all times he remained in de facto control of these entities. (See Compl. ¶¶ 55–61.)

7. The Trust defendants' argument that the Amended Complaint should be dismissed for the SEC's failure to plead facts, to satisfy either (1) the heightened requirements for corporate veil piercing created by English law or (2) the heightened requirements for trust veil piercing set out in cases where trusts were found liable for delinquent tax obligations incurred by individuals who controlled trust assets, is unavailing. The SEC has not alleged a theory of "veil piercing" in its complaint. Rather, the SEC has alleged that the knowledge and actions of Jorge Ballesteros should be imputed to the Trust defendants because they were dominated and controlled by him and he effectively directed their illegal activities. As such, the Trust defendants are independently liable under the securities laws. The SEC noted at oral argument, and it is clear from the Amended Complaint, that there is no attempt to "pierce the veil" because it is not alleged that the Trust defendants were sham entities. The theory of liability is based on the imputation of the knowledge of one actor to another, and is not an attempt to show that the Trust defendants had no existence outside of the activities of Jorge Ballesteros. Moreover, the "veil piercing" analogy is inapposite because the SEC does not seek to recover assets or obligations incurred by Jorge Ballesteros, but seeks independent relief, in the form of an injunction

and civil penalties, against the Trust defendants.

8. The Trust defendants point out that in some cases in which trust entities have been defendants in securities fraud actions those trusts are "nominal" defendants only, for the purposes of disgorgement, and the trusts have not been charged with violations of the securities laws. See, e.g., S.E.C. v. Lybrand, No. 00 Civ. 1387(SHS), 2000 WL 913894, at *12 (S.D.N.Y. July 6, 2000). However, the mere fact that in other cases trusts have only been sued as "nominal defendants" and not primary violators in no way precludes holding trusts directly liable for violations of Rule 10b–5 or Rule 14e–3. So long as the requirements of liability are satisfied, a trust, just as any other entity, may be held liable for violations of the securities laws.

9. To the extent that the defendants also argue that a trust may only be held liable for the activities of a trustee, and Jorge Ballesteros was not a trustee for any of the Trust defendants, this argument also lacks merit. There is no authority under the securities laws for such a proposition and no reason to distinguish a trust from a corporation. To give trusts more insulation for the activities of those who actually control them would simply create an unjustified means of circumventing the securities laws. Similarly, there is no authority to support the Trust defendants' argument that only individuals who have a fiduciary relationship to a trust have the ability to make the trust liable for violations of the securities laws.

■ The Trust defendants have consistently argued that because there has been complete disgorgement of all of the illegal profits from the insider trading activities attributed to the insider information obtained by Jorge Ballesteros, the Trust defendants can and should not be held independently liable for securities fraud. This argument has no merit. A district court has broad equitable power to fashion appropriate remedies for a violation of the federal securities laws. *Manor Nursing Centers, Inc.*, 458 F.2d at 1103. The remedies that plaintiffs are permitted to purse under the securities laws are broader than disgorgement. In this action, the SEC does not seek disgorgement, but injunctive relief and civil penalties pursuant to 15 U.S.C. § 78u–1. Civil penalties as well as injunctive relief may be obtained in an action under the securities laws, even if the court has also ordered disgorgement. *See, e.g., S.E.C. v. Berger*, No. 00 Civ. 333, 2001 WL 1403028, at *9–10 (S.D.N.Y. Nov. 13, 2001); *S.E.C. v. Rosenfeld*, No. 97 Civ. 1467WHPRLE, 2001 WL 118612, at *4 (S.D.N.Y. Jan. 9, 2001). Civil penalties and injunctive relief deter future violations of the securities laws, which an order of disgorgement, standing alone, cannot accomplish. As the House Report for the civil penalty provision stated:

> Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud. A violator who avoids detection is able to keep the profits resulting from illicit activities. Currently, even a violator who is caught is required merely to give back his gains with interest, leaving him no worse off financially than if he had not violated the law. The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator.

H.R.Rep. No. 101–616, 101st Cong., 2d Sess., reprinted in 1990 U.S.C.C.A.N. 1379, 1384–86 (quoted in *S.E.C. v. Coates*, 137 F.Supp.2d 413, 428–29 (S.D.N.Y.2001)). Consequently, the fact that there has been disgorgement of the illegal profits from Jorge Ballesteros' activities does not prohibit the SEC from pursuing this action under the relevant statutes and rules for other relief provided for in the securities laws.

### C.

■ The Trust defendants also move to dismiss the plaintiff's claims pursuant to Rule 9(b) of the Federal Rules of Civil Procedure for failure to plead the alleged fraud with sufficient particularity. Claims under § 10(b) and Rule 10b–5 must satisfy Rule 9(b). *Stevelman v. Alias Res. Inc.*, 174 F.3d 79, 84 (2d Cir.1999); *Alexander*, 160 F.Supp.2d at 651. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R. Civ. P. 9(b); *see also Four Finger Art Factory v. Dinicola*, No. 99 Civ. 1259 (JGK), 2001 WL 21248, at *5 (S.D.N.Y. Jan.9, 2001). To meet the requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993). Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). This strong inference can be established either "(a) by alleging facts to show that defendants had both motive and op-

portunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.; accord PI, Inc. v. Ogle*, 932 F.Supp. 80, 84 (S.D.N.Y.1996).

In the context of an insider trading claim, the specific facts with respect to the insider tips are often within the control and knowledge of the defendants, and therefore, Rule 9(b) is less stringent, so as "to allow circumstantial evidence to plead the specific content and circumstances of insider tips." *Alexander*, 160 F.Supp.2d at 649.

The Trust defendants argue that the Amended Complaint fails to satisfy Rule 9(b) because it fails to allege who at the Cardinal Trust, Gianni Trust, or the wholly owned investment companies engaged in fraudulent activity, and when, where and how they did so.[10] This argument simply misses the point. The SEC has alleged fraudulent activity, specifically insider trading, that was engaged in by Jorge Ballesteros, and it seeks to impute that knowledge and those actions to the Trust defendants. Consequently, so long as the allegations regarding Jorge Ballesteros' activities are sufficient to satisfy Rule 9(b), the Amended Complaint is sufficient to satisfy Rule 9(b) with respect to the Trust defendants. The Trust defendants have not argued that the allegations with respect to Jorge Ballesteros do not satisfy Rule 9(b). In any event, it is clear that the allegations of the Amended Complaint satisfy Rule 9(b). The Amended Complaint specifically alleges that Jose Ballesteros gained insider information with respect to an upcoming tender offer at a series of Nalco board meetings, Jose transferred that information to his brother Jorge in violation of Jose's fiduciary duty to Nalco, and Jorge directed that the Trust defendants execute the illegal trades. (*See* Compl. ¶¶ 33–38.). The Amended Complaint states sufficient particular facts to satisfy Rule 9(b) with respect to Jorge Ballesteros, and consequently for the Trust defendants, given the theory of liability in the Amended Complaint which imputes knowledge to the Trust defendants.

### III.

The Trust defendants also argue that the plaintiff is not entitled to civil penalties pursuant to the Insider Trading Sanctions Act (the "ITSA"), 15 U.S.C. § 78u–1. In this action, the SEC seeks not only civil penalties, but also a permanent injunction barring the Trust defendants from violating Rule 10b–5 and Rule 14e–3. Hence, irrespective of whether the SEC would be able to prove that the facts of this case support an award of civil penalties, the case will proceed. Because the SEC seeks an injunction, and because the Trust defendants do not argue that the SEC may not obtain an injunction as a form of relief, it is unnecessary, at this time, to reach the question of whether and under what circumstances the SEC may appropriately obtain civil penalties under the theory of liability alleged in the Amended Complaint.

### CONCLUSION

The remaining arguments are either moot or without merit. The Trust defendants' motion to dismiss the claims of the

---

10. While only Gianni Trust and Sagitton Limited make this argument in their motion to dismiss the Amended Complaint, the other Trust defendants raised the argument in their papers to dismiss the original Complaint, and those arguments were reincorporated by reference.

SEC pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b) is denied.

**SO ORDERED.**