[850 NE2d 1140, 818 NYS2d 164]

DEUTSCHE BANK SECURITIES, INC., Respondent, v MONTANA BOARD OF INVESTMENTS, Appellant.

Argued May 11, 2006; decided June 6, 2006

## POINTS OF COUNSEL

*Olshan Grundman Frome Rosenzweig & Wolosky LLP,* New York City (*Herbert C. Ross, Jr.,* of counsel), and *Chris D. Tweeten, Chief Civil Counsel, Office of the Attorney General of Montana,* admitted pro hac vice, for appellant. I. The State of Montana and its agencies, including Montana Board of Investments, are immune from suit in the courts of the State of New York. (*Federal Maritime Comm'n v South Carolina Ports Authority,* 535 US 743; *Alden v Maine,* 527 US 706; *Atascadero State Hospital v Scanlon,* 473 US 234; *Montana v Gilham,* 133 F3d 1133; *State v Peretti,* 661 F2d 756; *Morell v Balasubramanian,* 70 NY2d 297; *Pennhurst State School & Hospital v Halderman,* 465 US 89; *Seminole Tribe of Fla. v Florida,* 517 US 44; *Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574; *Nevada v Hall,* 440 US 410.) II. Comity considerations require dismissal of the action. (*Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574; *Franchise Tax Bd. of Cal. v Hyatt,* 538 US 488; *Crair v Brookdale Hosp. Med. Ctr., Cornell Univ.,* 94 NY2d 524; *Intercontinental Planning v Daystrom, Inc.,* 24 NY2d 372; *Bache & Co., Inc. v International Controls Corp.,* 339 F Supp 341; *Morrison v Budget Rent A Car Sys.,* 230 AD2d 253; *Loucks v Standard Oil Co. of N.Y.,* 224 NY 99; *Alan Lupton Assoc. v Northeast Plastics,* 105 AD2d 3; *Salomon Bros. v West Va. State Bd. of Invs.,* 152 Misc 2d 289; *Federal Maritime Comm'n v South Carolina Ports Authority,* 535 US 743.) III. The Court should reverse the Appellate Division's grant of summary judgment on liability and implicit ruling that affidavits denying insider trading are decisive and preclude any depositions. (*Securities &*

*Exch. Commn. v Musella,* 578 F Supp 425; *United States v O'Hagan,* 521 US 642; *Dirks v SEC,* 463 US 646; *Chiarella v United States,* 445 US 222; *Castellano v Young & Rubicam, Inc.,* 257 F3d 171; *Sommer v Federal Signal Corp.,* 79 NY2d 540; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Cruz v American Export Lines,* 67 NY2d 1; *Procter & Gamble Distrib. Co. v Lawrence Am. Field Warehousing Corp.,* 16 NY2d 344.) IV. The Montana Board of Investments did not transact any business giving rise to this action in the State of New York. (*Kreutter v McFadden Oil Corp.,* 71 NY2d 460; *Otterbourg, Steindler, Houston & Rosen v Shreve City Apts.,* 147 AD2d 327; *Barington Capital Group v Arsenault,* 281 AD2d 166; *Granat v Bochner,* 268 AD2d 365; *L.F. Rothschild, Unterberg, Towbin v McTamney,* 89 AD2d 540, 59 NY2d 651; *Professional Personnel Mgt. Corp. v Southwest Med. Assoc.,* 216 AD2d 958; *Alas Intl. v Ramiz,* 257 AD2d 408; *Parke-Bernet Galleries v Franklyn,* 26 NY2d 13; *Etra v Matta,* 61 NY2d 455; *M. Katz & Son Billiard Prods. v Correale & Sons,* 20 NY2d 903.)

*Krantz & Berman LLP,* New York City (*Larry H. Krantz* and *Wendy E. Gerstmann* of counsel), for respondent. I. The First Department correctly rejected Montana Board of Investments' demand for immunity from suit in New York. (*Nevada v Hall,* 440 US 410; *Franchise Tax Bd. of Cal. v Hyatt,* 538 US 488; *Seminole Tribe of Fla. v Florida,* 517 US 44; *Alden v Maine,* 527 US 706; *Federal Maritime Comm'n v South Carolina Ports Authority,* 535 US 743; *Montana v Gilham,* 133 F3d 1133.) II. The First Department correctly rejected Montana Board of Investments' comity defense. (*Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574; *Morrison v Budget Rent A Car Sys.,* 230 AD2d 253; *Curtis, Mallet-Prevost, Colt & Mosle v Garza-Morales,* 308 AD2d 261; *Marine Midland Bank v United Mo. Bank,* 223 AD2d 119; *De Rose v New Jersey Tr. Rail Operations,* 165 AD2d 42; *Eastern Consol. Props. v Adelaide Realty Corp.,* 95 NY2d 785; *People v Damiano,* 87 NY2d 477; *Franchise Tax Bd. of Cal. v Hyatt,* 538 US 488; *Nevada v Hall,* 440 US 410; *Crair v Brookdale Hosp. Med. Ctr., Cornell Univ.,* 94 NY2d 524.) III. The First Department properly dismissed Montana Board of Investments' defense of insider trading. (*Di Sabato v Soffes,* 9 AD2d 297, 11 AD2d 660; *Ehrlich v American Moninger Greenhouse Mfg. Corp.,* 26 NY2d 255; *Gateway State Bank v Shangri-La Private Club for Women,* 113 AD2d 791, 67 NY2d 627; *Bank for Sav. v Rellim Constr. Co.,* 260 App Div 70; *Securities & Exch. Commn. v Franco,* 253 F Supp 2d 720; *Securities & Exch. Commn. v Hahn Truong,* 98 F Supp 2d 1086; *Azurite*

*Corp. v Amster & Co.,* 844 F Supp 929, 52 F3d 15; *Froid v Berner,* 649 F Supp 1418; *Securities & Exch. Commn. v Singer,* 786 F Supp 1158; *Securities & Exch. Commn. v Musella,* 748 F Supp 1028.) IV. The First Department properly exercised jurisdiction over Montana Board of Investments. (*Indianapolis v Chase Nat. Bank,* 314 US 63; *Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574; *Parke-Bernet Galleries v Franklyn,* 26 NY2d 13; *Kreutter v McFadden Oil Corp.,* 71 NY2d 460; *Courtroom Tel. Network v Focus Media,* 264 AD2d 351; *Picard v Elbaum,* 707 F Supp 144; *Schomann Intl. Corp. v Northern Wireless, Ltd.,* 35 F Supp 2d 205; *Snyder v Madera Broadcasting, Inc.,* 872 F Supp 1191; *L.F. Rothschild, Unterberg, Towbin v Thompson,* 78 AD2d 795; *Barington Capital Group v Arsenault,* 281 AD2d 166.)

### OPINION OF THE COURT

Chief Judge KAYE.

This appeal concerns a March 25, 2002 bond transaction between plaintiff Deutsche Bank Securities, Inc. (DBSI) and defendant Montana Board of Investments (MBOI). DBSI, a Delaware corporation with its headquarters in New York, is (among other things) engaged in trading securities for its own account and for clients. MBOI is a Montana state agency charged with managing an investment program for public funds, the public retirement system and state compensation insurance fund assets. In the 13 months prior to the transaction at issue here, DBSI and MBOI had engaged in approximately eight other bond transactions with a face value totaling over $100 million. These transactions were principally negotiated between Stephen Williams, a director in the Global Markets Sales Division of DBSI in New York, and Robert Bugni, Senior Investment Officer-Fixed Income with MBOI in Montana.

On the morning of March 25, 2002, from New York City, Williams contacted Bugni to ask if MBOI was interested in swapping its Pennzoil-Quaker State Company 2009 bonds for DBSI's Toys R Us bonds, or selling the Pennzoil bonds to DBSI for a stated price. Williams communicated with Bugni electronically through the Bloomberg Messaging System, an instant messaging service provided to Bloomberg subscribers. Bugni responded that MBOI was not interested in the swap proposal. Williams countered that the Pennzoil bid looked good but Bugni replied that the bonds "will get a lot tighter" (increase in price) and MBOI wanted to hold onto them. Williams ended the exchange with a simple "THX" (thanks).

Approximately 10 minutes later, Bugni, knowing that Williams was in New York, sent him a new instant message asking whether the price originally quoted by Williams applied only to the swap, or if it would be the same for a cash purchase. Bugni indicated that MBOI had $15 million of Pennzoil bonds it might be interested in selling. Williams replied that DBSI would like to purchase $5 million of the bonds outright and could probably "trade the balance with one phone call." Bugni countered with a request that Williams investigate whether all $15 million could be sold at the price he quoted. After a DBSI colleague contacted some of his clients and found that DBSI had a sufficient market for all $15 million, Williams replied to Bugni that DBSI would purchase all $15 million at his quoted price, with a settlement date of March 28, 2002. Bugni agreed, and Williams sent a trade ticket and confirmation of the deal.

Hours after the parties concluded their agreement, on the evening of March 25, 2002, Shell Oil publicly announced that it had agreed to acquire Pennzoil-Quaker State Company, an announcement that would potentially increase the value of the bonds. The following day, MBOI advised DBSI that it was breaking the trade because it believed the buyer had inside information and the trade was "unethical & probably illegal." As a result of MBOI's cancellation, DBSI purchased the Pennzoil bonds elsewhere, paying an additional $1.6 million.

DBSI then commenced this action in Supreme Court, New York County, alleging breach of contract, and MBOI answered. After limited discovery, DBSI sought summary judgment as to liability as well as dismissal of MBOI's affirmative defenses. MBOI cross-moved for dismissal of the action based on its affirmative defenses of lack of personal jurisdiction, sovereign immunity and comity. Supreme Court granted MBOI's cross motion to dismiss the complaint for lack of personal jurisdiction and denied DBSI's motion for partial summary judgment. The Appellate Division in a comprehensive opinion unanimously reversed, dismissing MBOI's affirmative defenses and granting DBSI's motion for partial summary judgment as to liability.[1] We now affirm.

---

**1.** The Appellate Division granted MBOI leave to appeal, certifying to us the following question: "Was the order of this Court, which reversed the order of Supreme Court, properly made?"

## Discussion

MBOI contends that there is insufficient basis for the exercise of long-arm jurisdiction and thus the case must be dismissed for lack of personal jurisdiction. Additionally, MBOI urges that dismissal is mandated by principles of sovereign immunity and comity, and that in any event summary judgment is inappropriate because of triable issues of fact and a need for further discovery. We reject each contention.

## Personal Jurisdiction

New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" (CPLR 302 [a] [1]). By this " 'single act statute' . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]).

As we noted in *Kreutter*, the growth of national markets for commercial trade, as well as technological advances in communication, enable a party to transact enormous volumes of business within a state without physically entering it. Thus, we held that "[s]o long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that State" (*id.* at 466). We have in the past recognized CPLR 302 (a) (1) long-arm jurisdiction over commercial actors and investors using electronic and telephonic means to project themselves into New York to conduct business transactions (*see e.g. Parke-Bernet Galleries v Franklyn*, 26 NY2d 13 [1970]; *Ehrlich-Bober & Co. v University of Houston*, 49 NY2d 574 [1980]), and we do so again here.

MBOI should reasonably have expected to defend its actions in New York. As distinct from an out-of-state individual investor making a telephone call to a stockbroker in New York (*see Rothschild, Unterberg, Towbin v McTamney*, 59 NY2d 651 [1983]), MBOI is a sophisticated institutional trader that entered New York to transact business here by knowingly initiating and pursuing a negotiation with a DBSI employee in

New York that culminated in the sale of $15 million in bonds. Negotiating substantial transactions such as this one was a major aspect of MBOI's mission—"part of its principal reason for being" (21 AD3d 90, 95 [2005]). Further, over the preceding 13 months, MBOI had engaged in approximately eight other bond transactions with DBSI's employee in New York, availing itself of the benefits of conducting business here, and thus had sufficient contacts with New York to authorize our courts to exercise jurisdiction over its person.[2] As Professor Siegel has observed, where a defendant "deals directly with the broker's New York office by phone or mail [or e-mail] in a number of transactions instead of dealing with the broker at the broker's local office outside New York, long-arm jurisdiction may be upheld" (Siegel, NY Prac § 86, at 152 [4th ed]).

In short, when the requirements of due process are met, as they are here, a sophisticated institutional trader knowingly entering our state—whether electronically or otherwise—to negotiate and conclude a substantial transaction is within the embrace of the New York long-arm statute.

Sovereign Immunity and Comity

Before this Court, MBOI does not seriously press its claim of sovereign immunity, recognizing the controlling authority of *Nevada v Hall* (440 US 410 [1979] [states do not have immunity from suit in the courts of other states]). Rather, MBOI asks that, as a matter of comity, we honor its request for immunity from suit here.

■ Within its own borders, the State of Montana has waived immunity for breach of contract claims (Mont Code Ann § 18-1-404 [1] [a]), but specified that such claims can be brought only in the district courts of Montana (Mont Code Ann § 18-1-401). MBOI argues that New York should voluntarily defer to the Montana statute and dismiss this action. Our Court, however, has already rejected this argument in a strikingly similar case, *Ehrlich-Bober*, and we see no reason to depart from that precedent.

In *Ehrlich-Bober*, plaintiff, a New York City dealer in municipal and government securities, brought suit in New York State

---

**2.** Although we do not consider whether MBOI is "doing business" in New York such that it was "present" here (*see* CPLR 301), we note that, in the year preceding the transaction at issue, MBOI purchased approximately $471 million worth of securities directly from the New York offices of various entities in the securities industry.

court against the University of Houston, a public institution and agency of the State of Texas, for breach of two reverse repurchase agreements. The University of Houston argued that the case should be dismissed on comity grounds because the relevant Texas statute, permitting suit against the University of Houston, provided that such suits could be brought only in two specified Texas counties.

In holding that the case should not be dismissed, we explained that comity is not a mandate, but rather a voluntary decision to defer to the policy of another state. We began by comparing the foreign legislation to our own public policy, determining that the Texas law was in the nature of a restriction on venue serving that state's administrative convenience, rather than a limitation on liability serving an essential governmental interest. Contrasting this administrative convenience with New York's interest in protecting its residents as well as its preeminence as a commercial and financial capital, we concluded that our state has "a very strong policy of assuring ready access to a forum for redress of injuries arising out of transactions spawned here" (*Ehrlich-Bober*, 49 NY2d at 581). Indeed, the ability to access a local forum applying a well-established, commercially sophisticated body of law is certainly as important to New York businesses as are our extensive financial and communications resources.

Here, Montana's legislation serves essentially the same purpose as the Texas statute in *Ehrlich-Bober*—to limit venue rather than liability—and New York's identified interests remain at least as compelling today as in 1980. Thus, we decline to defer to the Montana statute vesting exclusive jurisdiction in the district courts of Montana. We continue to hold that where, as here, a lawsuit arises from a commercial transaction in which another state, or its agent, has knowingly projected itself into New York to take advantage of our financial markets, New York courts should not dismiss the action as a matter of comity. Where a more fundamental governmental interest of another jurisdiction is implicated against a less compelling New York policy, or where there is no material conflict between the two, our courts of course remain open to reasonable deference to the law of another jurisdiction as a matter of mutual respect and interstate harmony.

Summary Judgment

MBOI argues that partial summary judgment on liability was improperly granted because it presented circumstantial evi-

dence of insider trading raising triable issues of fact and meriting additional discovery.

■ MBOI, however, has offered no evidence to support its claim of insider trading—its claim begins and ends with the timing of the transaction. The parties' previous trading experience demonstrates that it was not unusual for several months to pass between transactions; that the parties had not traded in the previous six months is thus not proof that on March 25, 2002 DBSI had inside information. Similarly, the record belies any allegation that DBSI pressured MBOI into the transaction. When Bugni expressed his disinterest in the swap, Williams replied "THX" and walked away. Clearly, MBOI bears responsibility for the transaction at issue. Finally, the record does not support MBOI's claim that DBSI agreed to pay a premium for the Pennzoil bonds. On the date of the trade, MBOI itself believed that the bonds would "get a lot tighter," suggesting that DBSI was not overvaluing the bonds or paying a premium to acquire them. Indeed, in the days prior to the public announcement, DBSI sold Pennzoil bonds at a price greater than it agreed to pay MBOI in the trade at issue. Thus, no inference of illegality can be drawn from the agreed-upon price.

■■ The timing of the trade as "evidence" of impropriety does not of itself create a triable issue of fact regarding illegal conduct by DBSI, particularly in light of the affidavits of the DBSI employees who worked on the transaction swearing no foreknowledge of the Shell-Pennzoil announcement. Because MBOI failed to provide any evidentiary basis for its claim, we conclude that the Appellate Division properly granted summary judgment to DBSI, and that the Appellate Division did not abuse its discretion in rejecting MBOI's request for additional discovery.[3] The Appellate Division reasonably concluded that such discovery was unlikely to be productive. To order discovery based solely on a coincidence in timing would be to sanction a dubious quest for a defense.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

---

**3.** While disagreeing with the Appellate Division, the dissent cannot demonstrate that the Court's decision to deny additional discovery was an abuse of discretion (*see* CPLR 3212 [f]). MBOI, in short, has not raised the "doubt" that would entitle it to the benefit of full (or fuller) discovery. This is not, as the dissent suggests, a question of comity (dissenting op at 76-77). Comity does not include favoritism in the application of our discovery rules when another state is involved in litigation here.

READ, J. (dissenting in part). Defendant Montana Board of Investments (MBOI) claims that plaintiff Deutsche Bank Securities, Inc. (DBSI) and/or its client traded the Pennzoil-Quaker State Company 2009 bonds based on material nonpublic information, a concededly valid defense to DBSI's breach of contract claim. The majority concludes, however, that MBOI presented no evidence of insider trading, apart from a "coincidence in timing," and thus the Appellate Division did not abuse its discretion in rejecting MBOI's request for additional discovery (majority op at 74). I respectfully dissent.

To establish its insider trading defense, MBOI must demonstrate that

> "(1) the tipper possessed material nonpublic information regarding a publicly trade[d] company; (2) the tipper disclosed this information to the tippee [DBSI]; (3) the tippee traded in securities while in possession of the information; (4) the tippee knew or should have known that the tipper had violated a fiduciary duty by providing the information to the tippee; and (5) the tippee benefitted from the disclosure of the information by the tipper" (*Securities & Exch. Commn. v Franco*, 253 F Supp 2d 720, 726 [SD NY 2003]).

In *Securities & Exch. Commn. v de Castilla* (184 F Supp 2d 365, 376 [SD NY 2002]), the Securities and Exchange Commission (SEC) opposed the defendants' motion for summary judgment on insider trading claims. The SEC had no "direct" evidence of the existence of "inside information," but was relying on "the circumstances, the timing, and the nature of the relationships" (*id.*). The court described the case as follows:

> "Prior to the tender offer announced on January 24, 2000, the market had started to move, with trading increasing 110% on January 19 over the previous day's volume and more than doubling over the next two days. Whether this movement resulted from inside information, market perception, or shrewd judgment was the issue presented to the SEC. Certainly the circumstantial evidence warranted the investigation. Only after full discovery could [defendant's] knowledge, or lack of it, be determined" (*id.*).

While the court in *de Castilla* granted summary judgment to the defendants because there was direct evidence that they

could not have had inside information at the time of the attacked purchases, this does not detract from the message of the case. Insider trading claims often rely on circumstantial evidence and require "full discovery" (*see also Securities & Exch. Commn. v Hahn Truong*, 98 F Supp 2d 1086, 1098 [SD NY 2000] ["The summary judgment tool filters out cases in which plaintiffs rely entirely upon conclusory assertions and speculative allegations to state a claim for relief. After a respectable period of time for discovery through interrogatories, requests for admissions, requests for the production of documents, and depositions, reliance upon pure speculation is unacceptable. Plaintiffs are required to garner either direct or circumstantial evidence to back up their legal claims" (internal quotation marks and citation omitted)]; *Azurite Corp. Ltd. v Amster & Co.*, 844 F Supp 929 [SD NY 1994] [dismissing insider trading claims only after allowing full discovery], *affd* 52 F3d 15 [2d Cir 1995]).

Although "[t]he timing of the trade as 'evidence' of impropriety does not of itself create a triable issue of fact regarding illegal conduct by DBSI" (majority op at 74), MBOI does not rely solely on timing. MBOI presented evidence showing that the price DBSI offered for MBOI's Pennzoil bonds on March 25, 2002—$94.669 per $100 face value—was above the fair market value for these junk bonds. Specifically, the Bloomberg Professional service's estimate of fair market value did not exceed $91.81 per $100 face value during the period January 25, 2002 through March 25, 2005.

Moreover, MBOI did not simply invent the insider trading defense after DBSI sued for breach of contract. On March 26, 2002, MBOI immediately informed DBSI that "[Y]ou need to break the trade—the buyer had inside information" and that the trade was therefore "unethical & probably illegal." MBOI certainly may have been mistaken, but it has never had an adequate opportunity to investigate its legitimate suspicions through discovery (*see e.g. Jered Contr. Corp. v New York City Tr. Auth.*, 22 NY2d 187, 194 [1968] ["It is almost impossible to state in detail the circumstances constituting a fraud where those circumstances are peculiarly within the knowledge of the party against whom the defense is being asserted"]). This is because DBSI did not respond fully to MBOI's interrogatories, and moved for summary judgment while MBOI's demand for depositions was pending.

While comity does not require us to dismiss this claim, comity *does* call upon us to afford the benefit of the doubt to MBOI, a

sister state's agency charged with oversight over state pension and other state funds. Based, among other things, on DBSI's representation that it could "trade the balance [of Pennzoil bonds] with one phone call," MBOI believes that DBSI was buying, at least in part, for a client. If DBSI was, indeed, trading for a client, it was clearly premature to dismiss MBOI's insider trading defense based on the affidavits of DBSI's employee and former employee, who could only (and unsurprisingly did) deny their own advance knowledge of Shell Oil Company's acquisition of Pennzoil. In short, MBOI deserves the opportunity, at the very least, to depose these two witnesses and to obtain meaningful responses to its outstanding discovery demands.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur with Chief Judge KAYE; Judge READ dissents in part in a separate opinion.

Order affirmed, etc.