(March 10, 2005)

■ RICHARD B. SACHS, Appellant, v KATAYONE ADELI, Respondent, et al., Defendants. [791 NYS2d 47]—

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered July 21, 2004, which denied plaintiff's motion for summary judgment on his cause of action for recovery on a personal guaranty, unanimously reversed, on the law, without costs, the motion granted, and the matter remanded for further proceedings, including for calculation of appropriate attorneys' fees, costs and interest.

In July 2000, Klothes (NY) LLC (KNY) was formed for the purpose of producing and distributing garments designed by defendant Adeli. The management of KNY was vested in defendant. Plaintiff became an investor. On September 15, 2000, KNY entered into a "Factoring Agreement" with CIT Group/ Commercial Services, Inc. (CIT), in conjunction with which defendant executed a "Continuing Guaranty," personally and unconditionally guaranteeing the debts of KNY to CIT. In this guaranty, defendant waived any rights she may have for contribution, subrogation, performance or indemnification against, inter alia, any other guarantor for any amounts paid or acts performed by her.

On June 8, 2001, "in order to induce CIT to enter into or

continue a factoring and financing relationship with [KNY]," plaintiff executed a "Continuing Limited Guaranty," guaranteeing the debts of KNY to CIT under the Factoring Agreement, up to $1,000,000. In this guaranty, plaintiff similarly waived rights of contribution, subrogation, performance or indemnification but only "[u]ntil such time as all indebtedness and obligations owing by [KNY] to CIT under the Factoring Documents have been indefeasibly paid in full."

On or about April 15, 2003, CIT declared KNY to be in default under the Factoring Agreement. Following the sale of certain assets of KNY and the collection of KNY's accounts receivable, the outstanding balance due from KNY to CIT was approximately $630,000. By letter to the parties dated September 8, 2003, CIT offered, for a limited time, to refrain from further collection proceedings and to sell to either or both of them the remaining obligations and security interests in the debt owed.

Plaintiff then entered into a "Loan Purchase and Sale Agreement" whereby he purchased from CIT all rights, title and interest in the Factoring Agreement and related agreements for $641,753.34, the full amount of the outstanding debt. Pursuant to this agreement, CIT released plaintiff from his guaranty.

Plaintiff seeks, inter alia, to recover from defendant the entire $641,753.34, plus interest, fees and costs, as the present holder of the CIT loans guaranteed by her. Relying on California Civil Code § 1474, defendant argues that plaintiff's performance of the obligation for which they were jointly liable extinguished her liability, although she concedes that, pursuant to other provisions of the Code, plaintiff could assert a counterclaim for contribution. Our analysis of the statutes and case law leads us to conclude that plaintiff, a secondary obligor who satisfied the principal obligation, is subrogated to all rights of CIT, including the right to collect from defendant.

The statutes would appear to support defendant's position. California Civil Code § 1474 provides that "[p]erformance of an obligation, by one of several persons who are jointly liable under it, extinguishes the liability of all." California Civil Code § 1432 provides, in pertinent part, that "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." Other sections of the California Civil Code provide:* "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceed-

---

* These statutes refer to guarantors as well as to sureties (*see* Cal Civ Code § 2787 ["The distinction between sureties and guarantors is hereby abolished"]).

ings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; but the surety has no claim for reimbursement against other persons, though they may have been benefited by his act, except as prescribed by the next section." (§ 2847.) "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his co-sureties to contribute thereto, without regard to the order of time in which they became such." (§ 2848.) "A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a co-surety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not." (§ 2849.)

However, California courts have expressly held that "Civil Code section 2848 does not comprehensibly [*sic*] and exclusively measure a surety's rights to subrogation; '[that] section is merely declaratory of the common law on the subject, and controlling only so far as it goes' " (*Commercial Std. Ins. Co. v Bank of Am.*, 57 Cal App 3d 241, 247, 129 Cal Rptr 91, 94 [Ct App, 4th Dist 1976], quoting *In re Elizalde's Estate*, 182 Cal 427, 432, 188 P 560, 562 [1920]). Thus, while section 2848 provides that a surety is entitled to contribution from co-sureties, it does not expressly limit all sureties to that remedy against co-sureties. "[T]he common law, except so far as it is inapplicable to our conditions, or has been modified by statute, still remains in force" (*In re Elizalde's Estate*, 182 Cal at 432, 188 P at 562).

The case law supports plaintiff's position that, as a secondary obligor, he could purchase the loan and that such purchase did not extinguish the debt owed by other co-obligors. In *Pond v Dougherty* (6 Cal App 686, 92 P 1035 [Ct App, 1st Dist 1907]), several co-sureties who had paid a judgment assigned their claims for contribution to the plaintiff co-surety against the remaining surety that had not paid its share. Citing sections 1432, 2848 and 2849, the court began by stating that there was no question that one of several co-sureties who pays more than his share of a claim may compel contribution from all the jointly liable parties (6 Cal App at 688-689, 92 P at 1036). Then, referring specifically to section 2848, which "is silent on the question of subrogation as against a co-surety," the court concluded by stating that "there can be no doubt that a surety who is compelled to pay the debt of his principal is entitled to be subrogated to all the rights and remedies of the creditor as against his co-sureties, in precisely the same manner as against

the principal debtor" (*id.*). Accordingly, the court held that the plaintiff, as assignee of the paying sureties' rights, was subrogated to the right of the creditor to pursue its claim against the nonpaying co-surety.

In the instant case, the motion court declined to follow *Pond* because it dates from 1907, notwithstanding the absence of citation to any superceding law that alters the *Pond* court's interpretation of the statutes at issue. Instead, the motion court relied on the very recent case of *Great W. Bank v Kong* (90 Cal App 4th 28, 108 Cal Rptr 2d 266 [Ct App, 5th Dist, 2001]). There, the court framed the issue as, "whether partners who settle with a partnership creditor and thereby become assignees of a deficiency judgment based on a partnership debt can enforce that judgment against a non-settling partner" (90 Cal App 4th at 30, 108 Cal Rptr 2d at 267), and answered it thus: "[T]he assignee partners do not acquire the assignor's rights with respect to the judgment. Rather, the assignment of a joint and several debt to one or more of the co-obligors extinguishes that debt" (*id.*). The court explained that the assignment of a joint and several debt to a co-obligor extinguishes that debt because the assignment amounts to payment, and the evidence of the debt, i.e., the note or judgment, becomes of no further effect (90 Cal App 4th at 32, 108 Cal Rptr 2d at 269).

However, there is an express statement in the decision that "[t]his rule applies where the co-obligors share primary liability. If, however, a surety or guarantor, whose liability is secondary, pays the debt, that obligation is not automatically extinguished. Rather, the surety or guarantor can maintain an action on the original obligation against the party primarily liable for its payment" (90 Cal App 4th at 32-33, 108 Cal Rptr 2d at 269 [citations omitted]). While the court did not refer to a secondary obligor's right to recover the entire debt from a co-obligor, as opposed to the party primarily liable, its statement that the obligation is not extinguished is consistent with full subrogation rights in a secondary obligor as authorized by *Pond* (*supra*; *see also T.H. Mastin & Co. v Pickering Lbr. Co.*, 2 F Supp 605, 606 [ND Cal 1933], citing *Pond* ["It is the rule in California that a surety who pays the debt of his principal is subrogated to all of the right and priorities of the creditor"]).

Moreover, other cases are in accord with the general proposition that where a secondary obligor pays the debt, the obligation is not extinguished. For example, in *Manuel v Hicks Iron Works* (216 Cal 459, 14 P2d 756 [1932]), one of several guarantors of a promissory note brought an action against the maker and other guarantors to recover on the note after payment

thereof. The Supreme Court of California found that since the note was assigned to the paying guarantor, and all parties recognized that it was a purchase of the note and not a satisfaction and discharge, the obligation was not extinguished. "Nor can we see any sound reason," the court observed, "why a guarantor, whose liability is secondary, and on a contract independent of the note itself, cannot purchase a note. Normally, perhaps, his payment would be construed as a satisfaction thereof, leaving him with only a right to contribution. But the record shows that this is not a normal case, and it fully sustains the conclusion of the lower court that the note was purchased by plaintiff" (216 Cal at 462, 14 P2d at 758 [citations omitted]).

The instant plaintiff, as a secondary guarantor, purchased from CIT all rights, title and interest in the Factoring Agreement and related agreements, by entering into the above-discussed "Loan Purchase and Sale Agreement." As the *Manuel* court explained, "this suit is not upon the agreement but upon the note and guaranty; and the agreement is relevant only in tending to show that [the plaintiff] purchased the note" (*id.*).

Defendant's argument that California Civil Code § 1474 is dispositive of the issue on this appeal and that *Great Western* (*supra*) involved circumstances "remarkably similar" to those before us ignores the distinction between primary and secondary obligors. The *Great Western* court not only expressly distinguished between the two, but also expressly cited section 1474 before stating that the rule applies only where the co-obligors share primary liability (90 Cal App 4th at 32, 108 Cal Rptr 2d at 269). Moreover, the other cases cited by defendant in support of her argument also address the liability of primary, and not secondary, obligors (*see Quality Wash Group V, Ltd. v Hallak*, 50 Cal App 4th 1687, 1700, 58 Cal Rptr 2d 592, 600 [4th App Dist 1996] ["It was undisputed that *Quality*'s liability under the Allan note was primary. Thus, contrary to the court's finding that Quality was a holder in due course of the Allan note, Quality's payment of the note extinguished the liability of any other co-obligor under the note . . ."], cited by *Great W.*, 90 Cal App 4th at 32, 108 Cal Rptr 2d at 269; *Bailes v Keck*, 200 Cal 697, 703, 254 P 573, 576 [1927] ["plaintiff seeks to avoid the rule of law as to the extinguishment of obligations by the acts of comakers of a note and to hold Keck liable on the obligations which he jointly executed to the bank"]). Concur—Buckley, P.J., Tom, Andrias, Marlow and Ellerin, JJ.

