[804 NYS2d 731]

RICHARD B. SACHS, Appellant, v KATAYONE ADELI et al.,
Respondents, et al., Defendants.

First Department, November 29, 2005

## APPEARANCES OF COUNSEL

*Aaron Richard Golub, P.C.,* New York City (*Nehemiah S. Glanc, Aaron Richard Golub* and *Mark W. Moody* of counsel), for appellant.

*Ballon, Stoll, Bader & Nadler, P.C.,* New York City (*Susan Schneiderman* of counsel), for respondents.

## OPINION OF THE COURT

CATTERSON, J.

In this action for fraud, the plaintiff, Richard Sachs, appeals from the denial of his motion to compel the defendants-respondents Adeli and Klothes (NY) LLC to authorize the release of tax returns filed by their predecessor in interest.

In or around July 2000, the plaintiff invested in Klothes (NY) LLC (hereinafter referred to as KNY), a company formed by a California fashion designer, Katayone Adeli. In 1996, Adeli had formed a California corporation, Klothes LLC, and in 1998 formed a second California corporation, 35 Bond Street LLC (hereinafter referred to as 35BS), to establish a retail outlet for the sale of her designs in New York. In 2000, she formed KNY, a

Delaware corporation, to produce and distribute garments she designed, and merged Klothes LLC and 35BS into it. The plaintiff became a 23% owner in KNY.

Over the next couple of years, the plaintiff contributed to the corporation by executing guarantees in June and September 2001 and by investing approximately $315,000 in 2002. This increased his ownership interest in KNY to 33.139%.

In or about April 2003, KNY defaulted on a factoring and financing agreement with CIT group which Katayone Adeli had personally guaranteed. On October 15, 2003, the plaintiff purchased the debt of $630,000, the factoring agreement and the guarantees from CIT. In December 2003, the plaintiff commenced this action seeking to recover more than $640,000 as the holder of the CIT loans which Adeli had guaranteed.[1] He also alleged fraud against the defendants-respondents Adeli and KNY, claiming that at the time he made his investment, they had failed to disclose sales tax revenues owed to the New York State Department of Taxation and Finance (hereinafter referred to as NYDOTF) by 35BS.

On April 16, 2004, the plaintiff served the defendants-respondents with a notice to produce requesting various documents including those concerning the tax liabilities of 35BS, and those relating to the $100,000 of sales taxes owed by KNY to NYDOTF at the time of the plaintiff's initial investment. On September 29, 2003, the plaintiff requested an authorization from defendants-respondents to obtain tax information from the New York State authorities. The plaintiff also contacted the NYDOTF but was advised that state and federal returns for 35BS and KNY could be released only to Adeli, the "tax matters partner" of those corporations. On December 21, 2004, the plaintiff moved by order to show cause for an order compelling the defendants-respondents to execute the authorizations to the State of New York, asserting that the documents were central to his cause of action. The plaintiff also pointed out that he was a member and part owner of KNY which had assumed all of 35BS's liabilities. Nevertheless, the motion court denied the plaintiff's motion to compel.

■ We reverse, and grant the plaintiff's motion to compel.

1. The plaintiff's motion for summary judgment on this cause of action was denied by the motion court but that order was reversed by this Court, and the matter remanded for further proceedings including the calculation of appropriate attorneys' fees and costs. (*Sachs v Adeli*, 16 AD3d 175 [2005].)

As a threshold issue, although KNY was incorporated in Delaware, that does not divest New York of its interest in adjudicating this matter. The defendants-respondents' allegation that New York lacks jurisdiction to decide this case is based solely on the fact that the Delaware Commerce and Trade Law (Del Code Ann, tit 6, § 18-305 [f]) vests exclusive jurisdiction over this dispute in the Delaware Court of Chancery. That, however, does not mandate that this case be tried in Delaware. This Court has repeatedly held that "[a] statute or rule of another State granting the courts of that State exclusive jurisdiction over certain controversies does not divest the New York courts of jurisdiction over such controversies." (*Todtman, Young, Tunick, Nachamie, Hendler, Spizz & Drogin v Richardson*, 231 AD2d 1, 6 [1997], *remanded* 247 AD2d 318 [1998], *lv dismissed* 91 NY2d 1003 [1998], citing *Marine Midland Bank v United Mo. Bank*, 223 AD2d 119, 124-125 [1996], *lv dismissed* 88 NY2d 1017 [1996].)

The Court of Appeals has held that the doctrine of comity "is not a rule of law, but one of practice, convenience and expediency." (*Ehrlich-Bober & Co. v University of Houston*, 49 NY2d 574, 580 [1980], quoting *Mast, Foos & Co. v Stover Mfg. Co.*, 177 US 485, 488 [1900].) If an action concerns a commercial transaction in New York, and it is a matter on which the New York courts would otherwise have proper jurisdiction, comity does not prevent the New York courts from exercising that jurisdiction. (*Ehrlich-Bober & Co. v University of Houston*, 49 NY2d at 582.)

Furthermore, in addition to being tried in a New York court, New York law should be applied to the case at bar. This Court has recognized New York's

> "interest in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the Nation and the world. That interest naturally embraces a very strong policy of assuring ready access to a forum for redress of injuries arising out of transactions spawned here." (*Marine Midland Bank v United Mo. Bank*, 223 AD2d at 124 [citations omitted].)

In cases of conflict between foreign legislation and New York public policy, New York public policy must prevail. (*Ehrlich-Bober & Co. v University of Houston*, 49 NY2d at 580.) The plaintiff invested in a company that is headquartered in New York, conducts its principal business in New York and pays taxes

in New York. Additionally, the information the plaintiff seeks is available only from a New York State agency. All significant contacts of this case are with New York, therefore the plaintiff should be secure in the knowledge that the State of New York will provide both the laws and the forum for him to seek redress.

Limited Liability Company Law § 1102 (b) states that any member may inspect the federal, state and local income tax returns and reports of the company so long as it is for a reason reasonably related to the member's interest as a member. Also, this Court has held on a number of occasions that tax records are discoverable if the information contained within is necessary to the litigation and unavailable from any other source. (*Four Aces Jewelry Corp. v Smith*, 256 AD2d 42 [1998], *after remand* 257 AD2d 510 [1999]; *see also Nanbar Realty Corp. v Pater Realty Co.*, 242 AD2d 208 [1997]; *David Leinoff, Inc. v 208 W. 29th St. Assoc.*, 243 AD2d 418 [1997].)

Although the plaintiff has received numerous documents from defendants through discovery, the specific information of when and why the sales tax assessments were made against 35BS is not contained in those documents. The plaintiff possesses a tax warrant from the NYDOTF but has no record of prior warnings from the NYDOTF about the assessments. The law dictates that such warnings are sent out in advance of a tax warrant, and so their existence and contents could very well prove that defendants-respondents had advance knowledge of the impending financial crisis. This issue goes directly to the heart of the fraud claim.

 ■ The motion court erroneously dismissed the relevance of the sales tax documents[2] and stated that the plaintiff failed to show there was no other way of getting the information in the records. However, defendant-respondent Adeli is the "tax matters" member of KNY and thus the only person to whom the NYDOTF would release tax records. It is unclear whether any other source remains for obtaining the company tax records.

As for the necessity of obtaining the tax records for the fraud litigation, this Court fails to see what evidence could be more essential. The NYDOTF imposed several tax assessments on 35BS for the years 2000 and 2001 which totaled in excess of $100,000. That information is all available in the tax warrant.

---

2. The Supreme Court decision stated that it was "not going to grant [plaintiff's] application in any way shape or form at this juncture, and may never, because I don't even see what it is that is so important that you don't have."

However, for sales ending December 31, 1999, 35BS was already indebted to the NYDOTF for sales taxes in the sum of $42,344. Necessary and indispensable to the appellant's fraud litigation is a determination of when the NYDOTF initially advised 35BS of outstanding sales taxes and the amount of those taxes. In *Four Aces Jewelry Corp.* (256 AD2d at 42-43), this Court allowed the discovery of corporate tax returns where there was a period of time during which the underlying financial position of the company was in question and there was at least an inference of possible fraud. The plaintiff wishes to demonstrate fraud on the part of his business partners. The sales tax records represent persuasive evidence of whether or not defendants knew of the tax problems facing KNY prior to soliciting the plaintiff's investment.

While it is true that there exists the additional concern of confidentiality regarding the release of tax records, the plaintiff's request poses no threat. The Court of Appeals has observed that the confidentiality of tax records is justified by the need to protect taxpayer privacy and to facilitate enforcement of the tax laws by encouraging full and truthful taxpayer declarations. (*Matter of New York State Dept. of Taxation & Fin. v New York State Dept. of Law, Statewide Organized Crime Task Force*, 44 NY2d 575, 579-580 [1978].) The Court added that "neither the State's interest in obtaining a full report nor the taxpayer's in his privacy is diminished by affording the right to receive a certified copy of his or her own return." (*Id.* at 580.) The plaintiff does not seek the tax records of other taxpayers nor does his request pose an obstacle to the State's enforcement of its tax laws.

The plaintiff holds a 33.139% ownership interest in KNY. 35BS, as well as Klothes, became wholly owned subsidiaries of KNY when it was formed. The NYDOTF itself has recognized that KNY is the parent company and successor-in-interest to 35BS. Therefore, KNY is entitled to any tax information concerning 35BS. As owner of one third of KNY, the plaintiff is entitled to inspect the records of his company which includes the subsidiary 35BS.

Furthermore, the plaintiff's restricted access to the records by the NYDOTF has never been a matter of whether the plaintiff had a right to view those records. Rather, it is a mere technicality that the NYDOTF can only release records to the "tax matters" member of a company, but this has prevented the plaintiff from obtaining the records himself.

Even if this case were controlled by Delaware law, the outcome would remain the same. The Delaware Commerce and Trade Law (Del Code Ann, tit 6, § 18-305 [a]) states that

> "[e]ach member of a limited liability company has the right . . . to obtain from the limited liability company from time to time upon reasonable demand for any purpose reasonably related to the member's interest . . .

> "[t]rue and full information regarding the status of the business and [its] financial condition [and] . . .

> "a copy of the limited liability company's federal, state and local income tax returns for each year."

The possibility of fraud goes directly to the plaintiff's interest in KNY. In *Somerville S Trust v USV Partners, LLC* (2002 WL 1832830, 2002 Del Ch LEXIS 103 [Aug. 2, 2002]), the plaintiff made a claim of fraud analogous to that of the plaintiff in the case at bar. The Court of Chancery ruled that the plaintiff's request to view tax documents of the LLC was not only "reasonable" but that "the tax returns are essential and sufficient for Somerville's purposes for seeking inspection [into possible fraud]." (2002 WL 1832830, *10, 2002 Del Ch LEXIS 103, *32.) Because the plaintiff is a one-third owner in KNY, and the tax records of KNY's subsidiary 35BS are both necessary and otherwise unavailable for his fraud litigation, the plaintiff is entitled to inspect the tax records of 35BS.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered January 10, 2005, which, to the extent appealed from as limited by the briefs, denied the plaintiff's motion to compel the defendants-respondents to execute authorizations to release the sales tax records of 35 Bond Street LLC concerning certain sales tax liability incurred in 1999 and 2000, should be reversed, on the law and the facts, without costs, and the plaintiff's motion granted.

SAXE, J.P., NARDELLI, WILLIAMS and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered January 10, 2005, reversed, on the law and the facts, without costs, and plaintiff's motion to compel defendants-respondents to execute authorizations to release certain sales tax records granted.