[849 NYS2d 262]

JEAN BOUDREAUX et al., Appellants, v STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION et al., Defendants-Respondents.

First Department, January 24, 2008

## APPEARANCES OF COUNSEL

*Folkenflik & McGerity,* New York City (*Max Folkenflik* of counsel), for appellants.

*Orrick, Herrington & Sutcliffe LLP,* New York City (*Michael Stolper* and *Caroline S. Nolan* of counsel), for respondents.

## OPINION OF THE COURT

Nardelli, J.P.

In this appeal, we are called upon to review Supreme Court's vacatur of the filing of a Louisiana judgment by plaintiffs, members of a class who were victims of a devastating flood which occurred in April 1983.

The facts underlying this matter, and out of which the Louisiana judgment arose, are not in dispute.

On April 6 through 9, 1983, flood waters damaged a large number of homes and businesses in Tangipahoa Parish, Louisiana. Plaintiff Jean Boudreaux and "the victims of the flood on April 6, 1983" (*see Boudreaux v State, Dept. of Transp. & Dev.,* 906 So 2d 695, 699 [La 2005], *writ denied* 924 So 2d 1018 [La 2006]) brought a class action, approximately one year later, against various defendants, including the State of Louisiana. Plaintiffs alleged that the Louisiana Department of Transportation designed and built the Interstate 12 bridge over the Tangipahoa River in such a negligent and improper manner that it disrupted the natural flood plain, resulting in the flooding of their homes and properties. Plaintiffs prevailed on the issue of liability (*Boudreaux v State, Dept. of Transp. & Dev.,* 780 So 2d 1163 [La 2001], *writ dismissed* 815 So 2d 7 [La 2002]) and, after numerous appeals, were awarded $91,846,957.04 in damages, plus interest from April 10, 1984. Plaintiffs now seek to file, and enforce, the Louisiana judgment in New York.

The State of Louisiana, pursuant to its Constitution, has waived sovereign immunity (La Const, art XII, § 10 [A]). That

waiver, however, is subject to certain limitations. Article XII, § 10 (C) of the Louisiana Constitution provides, in pertinent part, that: "[n]o judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered."

Louisiana Revised Statutes Annotated § 13:5109 (B) (2) states:

> "*Any judgment* rendered in *any suit* filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of *the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only* out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or *out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.*" (Emphasis added.)

The Court of Appeal of Louisiana, Second Circuit, recently opined that "[a] judgment creditor of a political subdivision of the state has no way to collect its judgment except by appropriation . . . . Appropriation of funds is discretionary and not ministerial, and mandamus will not lie to compel payment of a judgment by a political subdivision" (*Newman Marchive Partnership, Inc. v City of Shreveport*, 962 So 2d 1075, 1077-1078 [La 2007]; *see also Cooper v Orleans Parish School Bd.*, 742 So 2d 55, 64 [La 1999], *writ denied* 751 So 2d 858 [La 1999]).

Plaintiffs herein have registered their judgment in 18 Louisiana parishes but, to date, the Louisiana legislature has declined to appropriate the funds necessary to pay that judgment. As a result, plaintiffs now seek, in our view, to do an end run around their own legislature, and the laws of their home state, by attempting to enforce the judgment in the New York courts.

The Full Faith and Credit Clause of the United States Constitution states that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial proceedings of every other State" (US Const, art IV, § 1). Its purpose is to avoid conflicts between the states in adjudicating the same matters, and functions to "weld the independent States into a Nation" (*Matter of Farmland Dairies v Barber*, 65 NY2d 51, 55 [1985]). In accordance therewith, a " 'judgment of a state court should have the same credit, validity, *and effect*, in every other court of the United States, which it had in the state where it was pronounced' " (*O'Connell v Corcoran*, 1 NY3d 179, 184

[2003] [emphasis added], quoting *Underwriters Nat. Assurance Co. v North Carolina Life & Accident & Health Ins. Guaranty Assn.*, 455 US 691, 704 [1982], quoting *Hampton v McConnel*, 3 Wheat [16 US] 234, 235 [1818]; *see also A.J. Pegno Constr. Corp. v Highlands Ins. Co.*, 39 AD3d 273, 274 [2007]). Thus, New York is only required to give the Louisiana judgment the same preclusive effect that Louisiana would give under its own law (*Matter of Luna v Dobson*, 97 NY2d 178, 183 [2001]; *see also* Restatement [Second] of Conflict of Laws § 111 ["(a) judgment will not be enforced in other states if the judgment is not subject to enforcement in the state of rendition because the judgment is subject to a condition not yet performed"]).

In the matter before us, we decline to give the Louisiana judgment any greater effect than it enjoys in Louisiana. Since such judgment does not become "payable" against the State of Louisiana until its legislature deems it so, it, likewise, cannot be enforced in the State of New York.

The doctrine of comity provides us with further guidance. It is settled that the doctrine of comity "is not a rule of law, but one of practice, convenience and expediency" (*Ehrlich-Bober & Co. v University of Houston*, 49 NY2d 574, 580 [1980], quoting *Mast, Foos & Co. v Stover Mfg. Co.*, 177 US 485, 488 [1900]; *see also Sachs v Adeli*, 26 AD3d 52, 55 [2005]). It is not a mandate, but a voluntary decision to defer to the laws and policies of a sister state (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 73 [2006], *cert denied* 549 US —, 127 S Ct 832 [2006]; *Crair v Brookdale Hosp. Med. Ctr., Cornell Univ.*, 94 NY2d 524, 529 [2000]).

In the matter at bar, the underlying events took place in Louisiana, impacted Louisiana citizens, and were litigated exclusively in Louisiana courts. In contrast, the rights of New York citizens are not involved in any manner, and New York has absolutely no connection to the events giving rise to the Louisiana judgment. Indeed, New York has absolutely nothing at stake in this matter, whereas the case implicates, and seeks to circumvent, Louisiana's laws and state constitution. As a result, we find that this is just such a case where we should defer to the laws of our sister state.

We further note that the cases cited by plaintiffs are unavailing, as the state in which enforcement is sought in those matters has an interest in protecting its citizens, or in the transaction itself, unlike here, where New York has no discernible interest at all (*Nevada v Hall*, 440 US 410 [1979] [held that

California residents injured on a California highway by a Nevada state-owned vehicle could recover in a California court under California law, despite a Nevada statute limiting tort recovery against that state to $25,000]; *Ehrlich-Bober & Co. v University of Houston*, 49 NY2d at 581 [permitted an action against a Texas state university to go forward in New York, notwithstanding a Texas statute limiting venue to two specified Texas counties, because comity did not require giving the Texas statute precedence over New York's compelling interest in providing a forum for redress of an injury that arose from a commercial transaction centered in New York and, further, that the implicated Texas statute was an administrative restriction on venue, not an "attempt to limit the liability of the State so as to safeguard the public fisc, a limitation which, conceivably might be found essential to the governmental function"]; *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d at 73 [held that action should not be dismissed, despite a Montana statute limiting venue to Montana, because the lawsuit arose from a transaction that occurred in New York, New York had a compelling interest in protecting its residents, its preeminence as a commercial and financial capital, and the strong policy of providing a forum for redress of injuries arising out of transactions spawned here]).

Merely because the contingent award of damages to plaintiffs is denominated as a "judgment" under Louisiana law, it does not follow that it is a judgment within the meaning of CPLR 5402. In our view, CPLR 5402 does not contemplate a foreign judgment that is a judgment only nominally, but instead contemplates an actual judgment, i.e., one that is enforceable in the jurisdiction in which it is rendered. Moreover, to construe CPLR 5402 as excluding a "judgment" that is unenforceable in the rendering jurisdiction is consistent with the Restatement (Second) of Conflict of Laws (*see* Restatement [Second] of Conflict of Laws § 111, Comment *a* ["(T)he judgment will not be enforceable in the other states so long as it remains unenforceable in the state of rendition. A judgment will not be given greater effect abroad than it enjoys at home"]; § 115, Comment *b* ["the local law of the state of rendition will be applied to determine whether equitable relief can be obtained against the judgment"]).

Finally, we disagree with the dissent's conclusion that a stay must be pursuant to a judicial act, and with the blanket statement that "we must presume, in the absence of authority to the

contrary, that the Louisiana courts expect that their judgment will be enforced." CPLR 5519, entitled "Stay of enforcement," subdivision (a), entitled "Stay without court order," provides seven different instances in which the enforcement of a judgment will be stayed, by operation of law, and without a court order.

Moreover, it is quite clear to us, from a review of Louisiana case law, that the Louisiana courts are well aware of the constitutional and statutory restrictions on the payment of judgments pending approval by their legislature and, although the courts may not approve of that mechanism, they have declined to circumvent it, or rule it unconstitutional (*see e.g. Batson v South La. Med. Ctr.*, 965 So 2d 890 [La 2007], *writ denied* 964 So 2d 945 [La 2007] [article XII, § 10 (C) of the Louisiana Constitution is aimed at protecting the public fisc and seeks to avoid upsetting governmental priorities by the payment of substantial money judgments]; *Newman Marchive Partnership, Inc. v City of Shreveport*, 962 So 2d at 1078-1079 ["(w)hile this Court recognizes and sympathizes with plaintiff's plight in getting its judgment against the City satisfied, we are without constitutional or statutory authority to compel the City to pay the judgment rendered against it. The constitutional waiver of sovereign immunity, together with the lack of legislation enabling enforcement, provides Newman with a right without a remedy. The remedy to this anomaly, however, is in the hands of the legislature, not the judiciary. To hold otherwise would create a separation of powers issue and have grave constitutional implications" (citing *Landry v City of Erath*, 628 So 2d 1178 [La 1993], *writ denied* 635 So 2d 235 [La 1994])]; *Foreman v Vermilion Parish Police Jury*, 336 So 2d 986, 989 [La 1976], *writ refused* 339 So 2d 846 [La 1976] ["The state clearly has the right to regulate the way in which judgments against its political subdivisions can be paid, and to prohibit the seizure of property owned by those subdivisions. In our opinion, the methods provided in the above cited statutes and constitutional provisions do not offend the rights granted to the judgment creditor by the Fourteenth Amendment of the Federal Constitution]").

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered September 18, 2006, which denied plaintiffs' motion for leave to make two technical changes in a Louisiana judgment so that it could be docketed in New York, and vacated plaintiffs' filing of that judgment, should be affirmed, without costs.

CATTERSON, J. (dissenting). Because I believe that the motion court erred in sua sponte vacating the plaintiffs' CPLR 5402 filing of a judgment against the State of Louisiana and in denying their motion for technical corrections to that filing, I respectfully dissent.

The facts of the underlying action brought in Louisiana are undisputed but should be noted nonetheless. In April 1983, a "devastating flood" occurred in Tangipahoa Parish, damaging the plaintiffs' property.[1] (*Boudreaux v State, Dept. of Transp. & Dev.*, 906 So 2d 695, 698 [La Ct App 2005], *writ denied* 924 So 2d 1018 [La 2006].) A year later, the plaintiffs brought a class action in Louisiana state court, alleging that the Louisiana Department of Transportation designed and built a bridge for Interstate 12 over the Tangipahoa River in a negligent and improper manner which prevented the river's floodwaters from escaping through their natural flood channel. The plaintiffs prevailed on liability (*Boudreaux v State, Dept. of Transp. & Dev.*, 780 So 2d 1163 [La Ct App 2001], *writ dismissed* 815 So 2d 7 [La 2002]), and, after appeal, were awarded $91,846,957.04, plus interest from April 10, 1984.

Louisiana's Constitution waives sovereign immunity. (La Const, art XII, § 10 [A].) However, it also states that "no public property or public funds shall be subject to seizure . . . No judgment against the state . . . shall be exigible, payable, or paid except from funds appropriated therefor by the legislature." (*Id.* § 10 [C].) To date, the Louisiana Legislature has failed to appropriate funds to pay the *Boudreaux* judgment.

On August 11, 2006, the plaintiffs attempted to file the Louisiana judgment in New York pursuant to CPLR 5402. However, the clerk of the court informed the plaintiffs' counsel that: (1) the portions of the judgment which were in favor of the class (as opposed to the individual plaintiffs) could not be docketed and that it would be appropriate to docket the judgment in favor of the attorneys for the class; and, (2) the clerk could not compute and enter prejudgment interest on a non-New York judgment. The plaintiffs then moved by order to show cause to correct these two technical problems.

The defendant opposed the motion, arguing that the plaintiffs' only remedy was to wait for the Louisiana Legislature to ap-

---

1. From April 6 through April 9, 1983 a torrential rain fell in southern Louisiana, eventually causing the worst flooding in the history of Washington-St.Tammany-Tangipahoa Parish areas. Indeed, the Tangipahoa River reached record flood stage, higher than that seen in the Great Mississippi Flood of 1927, which coincidentally, put Herbert Hoover in the White House.

propriate funds to pay the judgment. The plaintiffs then attempted to file reply papers to address the factual averments and legal arguments raised by the defendant, but the court refused to accept any submissions on the issue.[2]

Relying solely on article XII, § 10 (C) of the Louisiana Constitution, the motion court denied the plaintiffs' attempt to correct the two technical defects and ordered the clerk of the court to vacate the filing of the judgment. The court construed section 10 (C) as a stay of enforcement. The court then characterized the motion as "a waste of time" and "frivolous," saying that it would sanction the plaintiffs if it were not (the anniversary of) September 11.

The plaintiffs contend that the motion court should have granted their motion for technical corrections to the judgment and should not have vacated the filing of the Louisiana judgment. I submit that the plaintiffs are correct.

CPLR 5402 (a) states:

> "A copy of any foreign judgment authenticated in accordance with . . . the statutes of this state may be filed within ninety days of the date of authentication in the office of any county clerk of the state. The judgment creditor shall file with the judgment an affidavit stating that the judgment was not obtained by default in appearance or by confession of judgment, that it is unsatisfied in whole or in part, the amount remaining unpaid, and that its enforcement has not been stayed, and setting forth the name and last known address of the judgment debtor."

The only requirement of CPLR 5402 (a) that is in dispute is whether enforcement of the Louisiana judgment has been stayed. Indeed, that appears to be the sole basis for the court's ruling. It is plain, however, that article XII, § 10 (C) of the Louisiana Constitution is not a stay. In New York, a stay is ordinarily a judicial act: "a direction of the *court*." (*1544-48 Props. v Maitre*, 184 Misc 2d 984, 985 [App Term, 2d Dept 2000] [emphasis added]; *see also* CPLR 2201 ["*the court* in which an

---

2.  While I recognize that the decision to allow reply papers ordinarily rests in the sound discretion of the motion court, the court's decision to sua sponte vacate the foreign judgment filed pursuant to CPLR 5402 certainly entitled plaintiffs to be permitted to respond to the arguments raised by the defendant. To not allow the plaintiffs that opportunity was, I believe, a clear abuse of discretion.

action is pending may grant a stay of proceedings" (emphasis added)].) No Louisiana court has stayed enforcement of the *Boudreaux* judgment; on the contrary, we must presume, in the absence of authority to the contrary, that the Louisiana courts expect that their judgment will be enforced. (*See Baudoin v Acadia Parish Police Jury,* 702 So 2d 715, 720 [La Ct App 1997], *writ denied* 706 So 2d 458 [La 1997] [governmental defendant's refusal to pay if able to do so disrespected court's judgment].)

The defendant contends and the majority agrees that the Louisiana judgment should not be given greater effect in New York than it would in Louisiana. This argument is similarly unavailing as it conflates two different concepts: the effect of a domestic judgment on state assets versus the ability to enter a foreign judgment pursuant to the Full Faith and Credit Clause.

The U.S. Supreme Court has made it plain that "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." (*Baker v General Motors Corp.,* 522 US 222, 233 [1998].) Furthermore, "[f]ull faith and credit . . . does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment . . . ; such measures remain subject to the . . . control of forum law." (*Id.* at 235.)

The New York Court of Appeals has reached a similar result. In *Morris Plan Indus. Bank of N.Y. v Gunning* (295 NY 324 [1946]), the plaintiff held an unsatisfied Pennsylvania judgment against the defendant, who lived and worked in Pennsylvania. (*Id.* at 327.) Pennsylvania law did not permit the plaintiff to garnish or attach the defendant's wages. (*Id.* at 328.) However, New York law allowed the plaintiff to garnish 10% of the defendant's wages. (*Id.*) The Court stated "questions of garnishment and attachment are decided by the law of the forum since they deal with remedies. Therefore, the Pennsylvania law forbidding garnishment of wages has no effect in New York, although the wages attached were earned in Pennsylvania." (*Id.* at 331-332 [citations omitted];[3] *see* Restatement [Second] of Conflict of

---

**3.** The defendant seeks to distinguish *Morris* on the basis that a New York statute was involved in that case. However, that distinction is immaterial to the application of a different New York statute: CPLR 5402.

Laws § 99 ["(t)he local law of the forum determines the methods by which a judgment of another state is enforced"].)[4]

"Every state has jurisdiction to determine for itself the liability of property *within its territorial limits* to seizure and sale under the process of its courts." (*Clark v Williard*, 294 US 211, 213 [1935] [emphasis added].) Thus, the defendant has every right to exempt its property *in Louisiana* from seizure. However, if the defendant chooses to hold a bank account or real property in New York, it simply cannot dictate that its New York-sited property must be exempt from seizure. The majority cites no authority to the contrary. Indeed, the cases cited by the majority are Louisiana state court decisions concerning the effect of a judgment on property of the state located within the state. (*See also Baker*, 522 US at 232 ["The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate'" (quoting *Pacific Employers Ins. Co. v Industrial Accident Comm'n*, 306 US 493, 501 [1939])].) There simply is no basis in law to hold that New York must give Louisiana's Constitution extraterritorial effect.

*De Nunez v Bartels* (241 AD2d 414 [1st Dept 1997]), cited by the defendant, is not to the contrary. There, the Louisiana district court judgment that the petitioner sought to enforce in New York was modified by a Louisiana appellate court. (*Id.* at 415-416.) By contrast, in the case at bar, the Supreme Court of Louisiana has denied writs of certiorari (924 So 2d 1018 [La 2006], 924 So 2d 174 [La 2006]), so there is no danger that the judgment sought to be enforced will be modified.

The defendant also contends that, as a matter of comity, New York should decline to enforce the judgment against it. I disagree on two grounds.

First, the procedure under CPLR article 54 is clear. It requires immediate recognition of a final sister state judgment rendered with jurisdiction. (Siegel, Practice Commentaries, McKinney's

---

4. The Restatement sections cited by the defendant (§§ 111 and 115) and adopted by the majority are inapplicable. Section 111 says, "A judgment will not be enforced in other states if the judgment is not subject to enforcement in the state of rendition because the judgment is subject to a condition not yet performed." An example of a condition is that "A shall recover $10,000 against B when A has tendered B a good and sufficient deed conveying certain land." (Restatement [Second] of Conflict of Laws § 111, Comment *c*, Illustration 2.) Section 115 says, "A judgment will not be recognized or enforced in other states if upon the facts shown to the court equitable relief could be obtained against the judgment in the state of rendition."

Cons Laws of NY, Book 7B, CPLR C5402:2, at 570; *see Fauntleroy v Lum*, 210 US 230 [1908].) Louisiana has no more right to object to the docketing of this judgment on the grounds of comity than it would have to the docketing of any judgment, by any party, against it. Such judgments are subject to immediate filing and docketing in accordance with CPLR article 54, without notice being sent to Louisiana until 30 days after filing. Certainly, the ministerial corrections requested by plaintiffs, even if unremedied, are mere "defect[s]" or "irregularit[ies]" which do not "stay[ ], impair[ ] or affect[ ]" the validity or enforceability of the judgment. (CPLR 5019 [a].) Indeed, under similar circumstances it appears uncontroverted that Louisiana itself would require docketing under its Enforcement of Foreign Judgments Act. (*Littleton v Moss*, 914 So 2d 51, 55 [La Ct App 2005].)

Second, public policy of this state requires enforcement of the judgment. "[W]here there is a conflict between our public policy and application of comity, our own sense of justice and equity as embodied in our public policy must prevail." (*J. Zeevi & Sons v Grindlays Bank [Uganda]*, 37 NY2d 220, 228 [1975], *cert denied* 423 US 866 [1975].) Surely it is just and equitable for the plaintiffs, who were injured more than 20 years ago, due to the malfeasance of an agent of the defendant, to be compensated for their losses.

The defendant's public policy is that it is for the legislature to decide when a valid judgment rendered against it is satisfied from the public fisc. However, this public policy can necessarily apply only to property of Louisiana that remains in the state. If the defendant chooses to do business here, it should not expect treatment other than that accorded by state law in New York.

The motion court ruled on the basis of its understanding of sovereign immunity. However, Louisiana has, by its constitution, waived sovereign immunity. The Louisiana Constitution is clear—the state has "[n]o [i]mmunity in [c]ontract and [t]ort." (La Const, art XII, § 10 [A].)[5] The judgment in question arises out of torts committed by the state and, therefore, immunity has been waived. The underlying action was tried by a Louisiana state court and affirmed by the Louisiana Court of Appeal. A writ of certiorari was denied by Louisiana's Supreme Court. The motion court erred in characterizing this as an exercise of

---

**5.** Article XII, § 10 (A) provides: "No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."

sovereign immunity, when it is nothing more than an exemption from execution for assets of the state. (*See* La Const, art XII, § 10 [C].)[6]

In *Nevada v Hall* (440 US 410 [1979]) and *Ehrlich-Bober & Co. v University of Houston* (49 NY2d 574 [1980]), the U.S. Supreme Court and the New York Court of Appeals made clear that exceptions or limitations on the obligation of the state to pay a judgment need not be recognized as a matter of full faith and credit, nor deferred to as a matter of sovereign immunity. In *Nevada v Hall*, Nevada waived sovereign immunity as to tort suits against the state provided that they were expressly limited to a judgment cap of $25,000. The Supreme Court upheld a California judgment against Nevada which ignored the damage cap on the ground that any alleged sovereign immunity did not apply in California, and California was not required to enforce Nevada's limitation on damages.

Similarly, in *Ehrlich-Bober & Co.*, the State of Texas waived sovereign immunity provided that any suit against the state was required to be brought in the State of Texas courts. The Court of Appeals disregarded the Texas public policy and upheld a judgment entered in an action brought in the New York Supreme Court in complete disregard of Texas's claim of sovereign immunity. Thus, Louisiana's claim of sovereign immunity does not automatically provide it with a defense in a New York court as it would in Louisiana. (*See also Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 73 [2006], *cert denied* 549 US —, 127 S Ct 832 [2006].)

The size of the judgment—$270,837,526.85 as of August 9, 2006, when interest is included—may seem daunting. However,

---

6. Article XII, § 10 (C) provides:

"Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered."

there are 1,286 plaintiffs. (*Boudreaux*, 906 So 2d at 703.) Moreover, the amount of interest ($178,990,569.81 as of August 9, 2006) is partly defendant's fault: it chose to appeal multiple times. (*Boudreaux v State, Dept. of Transp. & Dev.*, 690 So 2d 114 [La Ct App 1997] [class certification]; *Boudreaux v State, Dept. of Transp. & Dev.*, 780 So 2d 1163 [La Ct App 2001], *writ dismissed* 815 So 2d 7 [La 2002] [liability]; *Boudreaux v State, Dept. of Transp. & Dev.*, 906 So 2d 695 [La Ct App 2005], *writ denied* 924 So 2d 1018 [La 2006] [damages].) In any event, finding in the plaintiffs' favor on the instant motion does not necessarily mean that the defendant will immediately have to pay $270 million; it merely means that the plaintiffs can begin discovery into the defendants' assets in New York.

WILLIAMS, BUCKLEY and McGUIRE, JJ., concur with NARDELLI, J.P.; CATTERSON, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered September 18, 2006, affirmed, without costs.