**2** C. MAHENDRA (NY), LLC, Appellant, v NATIONAL GOLD & DIAMOND CENTER, INC., Respondent. [3 NYS3d 27]—

Order, Supreme Court, New York County (Ellen M. Coin, J.), entered May 29, 2013, which granted defendant's motion to dismiss the complaint for lack of personal jurisdiction, unanimously reversed, on the law, without costs, and the motion denied.

Plaintiff is a New York wholesale supplier of loose diamonds on consignment to vendors; defendant is a California seller of jewelry, including goods that it accepted on consignment. The parties began doing business with each other in 2002; defendant placed numerous orders, totaling millions of dollars, by telephoning plaintiff in New York and negotiating terms of size, price range, and description of the diamonds. In the course

of their dealings, plaintiff shipped diamonds to defendant "on memorandum" so that defendant could examine the diamonds and decide whether to keep them. Plaintiff then sent defendant invoices for the diamonds it purchased. Both the memoranda and invoices contained conditions regarding jurisdiction, each stating: "[Y]ou consent to the exclusive jurisdiction of the State and Federal courts situate[d] in New York County. This contract shall be construed and governed in accordance with the laws of New York, without giving effect to its choice of law principles."

Several years into the parties' business arrangement, defendant allegedly failed to pay a balance of around $14,000 for a June 2009 consignment. Similarly, defendant allegedly failed to pay more than $50,000 for a March 2011 consignment. Plaintiff commenced this action, seeking to recover more than $64,000. In its complaint, plaintiff interposed causes of action for, among other things, account stated, goods sold and delivered, and breach of contract.

Defendant moved to dismiss the complaint on several grounds, including lack of personal jurisdiction. On the motion, defendant argued that its telephone calls, letters, and faxes to plaintiff—defendant's only connection to New York—did not constitute sufficient "purposeful activity" or sufficient contacts to subject it to personal jurisdiction in this state.

Further, defendant argued, the forum selection clause in the consignment memorandums was not binding because its president never signed the memorandums' terms and conditions. Defendant thus maintained that it had not signed or agreed to the forum selection clause, nor had it otherwise consented to being sued in New York. Likewise, defendant asserted that because it had negotiated for and ordered the diamonds from California and did not sign or agree to the forum selection clause, the consent to jurisdiction contained in the memorandums would materially alter the parties' agreements in contravention of UCC 2-207 (2) (b). Thus, defendant concluded, it was not bound by the unsigned provision on the back of the consignment memorandums.

In opposition, plaintiff argued that the forum selection clause was, in fact, binding on defendant. Indeed, plaintiff asserted, UCC 2-207 applies only in instances where additional terms are added to an expression of acceptance or written confirmation of an offer. In this case, plaintiff argued, the forum selection clause appeared on all invoices and memorandums submitted to defendant, including the March 2011 invoice and memorandum, and there was no contract between the parties

until defendant accepted the goods. Therefore, plaintiff maintained, defendant's retention of the goods shipped created a cognizable contract, in accordance with the terms and conditions on the invoices and memorandums, including the forum selection clause. Accordingly, plaintiff concluded that the forum selection clause was actually contained in the original documentation that formed the contracts.

The motion court granted the motion to dismiss. In so doing, it found the forum selection clause invalid, noting that defendant did not sign the invoices. The court further found that under UCC 2-207 (2), forum selection clauses are additional terms that materially alter a contract, and must be construed as mere proposals for additions to the contract. Thus, the court concluded, the forum selection clause was non-binding absent an express agreement. Indeed, the court noted, the complaint did not allege that defendant affirmatively expressed consent, either orally or in writing, to the forum selection clause when it retained the invoices.

Further, the court found, personal jurisdiction was lacking on a "transaction of business" theory because defendant's telephone orders from California to New York were not sufficiently purposeful activity to confer jurisdiction. Indeed, the court noted, defendant's employees did not travel to New York on business, but rather, plaintiff's employees traveled to California to establish business relations and display merchandise. The court distinguished *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.* (7 NY3d 65 [2006], *cert denied* 549 US 1095 [2006]), upon which plaintiff had relied for its argument that telephone calls provide a sufficient basis for jurisdiction, finding that in *Deutsche Bank*, the defendant was a "sophisticated institutional trader" negotiating and concluding a substantial transaction.

The motion court correctly found that defendant is not bound by the forum selection clause on plaintiff's invoices. UCC 2-207 contemplates situations like the one here, where parties do business through an exchange of forms such as purchase orders and invoices. As the parties did here, merchants frequently include terms in their forms that were not discussed with the other side. UCC 2-207 (2) addresses that scenario, providing, "[t]he additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: . . . (b) they materially alter it."

Here, during telephone discussions, the parties negotiated the essential terms required for contract formation, and the invoices were merely confirmatory (*see Hugo Boss Fashions v Sam's Eur. Tailoring*, 293 AD2d 296, 297 [1st Dept 2002]).

Thus, the forum selection clause is an additional term that materially altered the parties' oral contracts, and defendant did not give its consent to that additional term (*id.*; *see also Orkal Indus., LLC v Array Connector Corp.*, 97 AD3d 555, 556-557 [2d Dept 2012]).

However, the motion court erred in finding that the parties' telephone dealings over several years and in the two transactions at issue were insufficient as a matter of law to confer personal jurisdiction over defendant pursuant to CPLR 302 (a) (1). CPLR 302 (a) (1) authorizes the assertion of long-arm jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR 302 (a) (1) is a "single act statute"; accordingly, physical presence is not required and one New York transaction is sufficient for personal jurisdiction. The statute applies where the defendant's New York activities were purposeful and substantially related to the claim (*see D&R Global Selections, S.L. v Bodega Olegario Falcón Piñeiro*, 90 AD3d 403, 404 [1st Dept 2011]). " 'Purposeful' " activities are defined as " 'those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws' " (*id.*, quoting *Fischbarg v Doucet*, 9 NY3d 375, 380 [2007]).

We recognize that courts of this state have generally held telephone communications to be insufficient for finding purposeful activity conferring personal jurisdiction (*see Arouh v Budget Leasing, Inc.*, 63 AD3d 506 [1st Dept 2009]; *Liberatore v Calvino*, 293 AD2d 217, 220 [1st Dept 2002]). However, there are exceptions to this general rule, and in some cases, telephone communications will, in fact, be sufficient to confer jurisdiction (*see e.g. Deutsche Bank*, 7 NY3d at 71 [CPLR 302 (a) (1) conferred long-arm jurisdiction over out-of-state institutional investor who called plaintiff, a New York securities firm, to make a trade, and the suit arose from that transaction]; *Fischbarg*, 9 NY3d at 380 [California defendants "transacted business" where they formed an attorney-client relationship with plaintiff attorney in New York through numerous telephone calls, faxes, mail contacts, and emails]).

Here, the court did not assess defendant's conduct or defendant's purposeful availment of the privilege of doing business in this forum (*see Fischbarg*, 9 NY3d at 380-381). Although the motion court distinguished *Deutsche Bank* by pointing to the sophistication of the parties and the magnitude of the transactions in that case, those two factors do not determine the ques-

tion of personal jurisdiction. On the contrary, as the Court of Appeals found in *Fischbarg*, the "quality of defendants' contacts" is the primary consideration in deciding the question of long-arm jurisdiction (*id.* at 380). That the circumstances of the defendant's telephone calls in this case were different from those in *Deutsche Bank* does not make defendant's calls any less "purposeful." While the business dealings in this case were not especially complex, they also did not fall on the opposite end of the spectrum—that is, a single consumer transaction (*see Parke-Bernet Galleries v Franklyn*, 26 NY2d 13, 17 [1970]). The quality of the defendant's conduct was sufficient to subject defendant to long-arm jurisdiction. Concur—Sweeny, J.P., Moskowitz, DeGrasse, Manzanet-Daniels and Clark, JJ.