State of New York v Vayu, Inc. (2021 NY Slip Op 04068)





State of New York v Vayu, Inc.


2021 NY Slip Op 04068


Decided on June 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 24, 2021

531110
[*1]State of New York, Appellant,
v
Vayu, Inc., Defendant.

Calendar Date:April 20, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Letitia James, Attorney General, Albany (Dustin J. Brockner of counsel), for appellant.



Garry, P.J.
Appeal from an order of the Supreme Court (Walsh, J.), entered January 23, 2020 in Albany County, which granted defendant's motion to dismiss the complaint.
In September 2016, the State University of New York at Stony Brook (hereinafter SUNY Stony Brook) entered into an agreement to purchase two unmanned aerial vehicles (hereinafter UAVs) from defendant, a corporation based in Michigan and incorporated in Delaware that designs and manufactures UAVs. The agreement provided for the UAVs to be delivered to SUNY Stony Brook's Global Health Institute in Madagascar, and to be used for delivery of medical supplies to remote areas of that country.[FN1] Following the delivery of the UAVs to Madagascar, SUNY Stony Brook alleged that the UAVs were defective and returned them to defendant in Michigan. When defendant thereafter failed to replace them or provide a refund, plaintiff commenced this action on behalf of SUNY Stony Brook asserting breach of contract, among other claims. Defendant moved to dismiss the complaint due to lack of personal jurisdiction (see CPLR 3211 [a] [8]). Supreme Court granted defendant's motion, finding that it could not exercise jurisdiction pursuant to the long-arm statute (see CPLR 302). Plaintiff appeals.
Specific or long-arm jurisdiction allows a court to, as pertinent here, "exercise personal jurisdiction over any non-domiciliary . . . who in person, or through an agent . . . transacts any business within the state" (CPLR 302 [a] [1]).[FN2] "The CPLR 302 (a) (1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions" (Rushaid v Pictet & Cie, 28 NY3d 316, 323 [2016]; see D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d 292, 297 [2017]). "Inasmuch as CPLR 302 (a) (1) is a single act statute[,] proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted (Gottlieb v Merrigan, 119 AD3d 1054, 1056 [2014] [internal quotation marks, ellipsis and citations omitted]; see Fischbarg v Doucet, 9 NY3d 375, 380 [2007]). "Exercise of personal jurisdiction under CPLR 302 (a) (1) must also comport with federal due process" (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 299; see Rushaid v Pictet & Cie, 28 NY3d at 330). "As the party seeking to assert personal jurisdiction, [the] plaintiff [bears] the burden of proof on this issue. Such burden, however, does not entail making a prima facie showing of personal jurisdiction; rather, [the] plaintiff need only demonstrate that it made a sufficient start to warrant further discovery" (Bunkoff Gen. Contrs. v State Auto. Mut. Ins. Co., 296 AD2d 699, 700 [2002] [internal quotation [*2]marks and citations omitted]; see Archer-Vail v LHV Precast Inc., 168 AD3d 1257, 1260-1261 [2019]).
In opposition to defendant's motion to dismiss, plaintiff submitted the affidavit of a visiting research professor with SUNY Stony Brook and the founding director of the Global Health Institute in Madagascar (hereinafter the professor). The professor averred that, in 2013, defendant's chief executive officer (hereinafter the CEO) contacted him with the idea to use UAVs to transport medical supplies and specimens. Upon the commencement of the professor's employment with SUNY Stony Brook in 2015, he contacted the CEO "with the purpose of creating a business relationship between [defendant] and [SUNY] Stony Brook" to develop use of UAVs for delivery of medical supplies. The professor asserted that, thereafter, the CEO sought to develop the UAVs that could be sold to SUNY Stony Brook, through telephonic and email conversations with him and other SUNY Stony Brook employees. It was also alleged that the parties knew that the contacts between SUNY Stony Brook and defendant would be "continuous for some time in the future," and included training and technical support for operation of the UAVs and submission of grant applications for funding for future UAV development. To that end, SUNY Stony Brook and defendant jointly submitted a grant proposal for funding to cover the manufacture, use and maintenance of the UAVs for delivery of medical supplies in other countries.
Following test flights in Madagascar, where the UAVs allegedly did not perform well, the professor and the CEO engaged in conversations to improve the UAVs. Ultimately, in September 2016, SUNY Stony Brook agreed to purchase the UAVs, with SUNY Stony Brook receiving an invoice from defendant and remitting payment to defendant's bank account in Michigan. The UAVs were delivered to Madagascar in November 2016. After the issues with the UAVs surfaced, the professor and the CEO met in New York in September 2017 to discuss the problems and the Madagascar project. Upon defendant's alleged agreement to replace the UAVs, SUNY Stony Book subsequently shipped the UAVs back to defendant in Michigan.
It is undisputed that the parties formed a relationship. Nonetheless, in reviewing the parties' interactions as summarized above, we agree with Supreme Court that defendant did not "purposefully avail[] itself of 'the privilege of conducting activities within [New York],' by . . . transacting business in New York," thus invoking the benefits and protections of New York's laws (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 297, quoting Rushaid v Pictet & Cie, 28 NY3d at 323). The various communications between the parties were twofold: first, to discuss the ongoing issues with the UAVs that SUNY Stony Brook purchased and, second, to create a relationship and to submit grants for projects that would take place entirely and solely outside of New York. Regardless of the quantity [*3]of defendant's communications with SUNY Stony Brook, these communications did not result in more sales in New York or seek to advance defendant's business contacts within New York (see Paterno v Laser Spine Inst., 24 NY3d 370, 378 [2014]). Rather, the business transacted — specifically the sale of the UAVs to SUNY Stony Brook for use in Madagascar — was a one-time occurrence that resulted after the professor commenced employment with SUNY Stony Brook in 2015 and then contacted the CEO (compare D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 298; Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71-72 [2006], cert denied 549 US 1095 [2006]). The visit by the CEO to New York in 2017 was for the purpose of discussing issues regarding the completed purchase of the UAVs, rather than seeking additional business from SUNY Stony Brook or other entities in New York (compare D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 298; Stardust Dance Prods., Ltd. v Cruise Groups Intl., Inc., 63 AD3d 1262, 1264-1265 [2009]). The UAVs were shipped to Madagascar and subsequently returned to defendant in Michigan. The grant that SUNY Stony Brook and defendant applied for was not intended to benefit New York, but rather other countries. Given these facts, we find that defendant could not reasonably have expected to defend this action in New York and, thus, Supreme Court properly dismissed the complaint for lack of personal jurisdiction.
Aarons and Reynolds Fitzgerald, JJ., concur.
Egan Jr., J. (dissenting).
Because we believe that defendant's business activities both within and directed at this state bring it within the reach of New York's long-arm statute (see CPLR 302 [a] [1]), we respectfully dissent.
"A New York court may exercise personal jurisdiction over a nondomiciliary who, either in person or through his or her agent, 'transacts any business within the state or contracts anywhere to supply goods or services in the state'" (Urfirer v SB Bldrs., LLC, 95 AD3d 1616, 1617 [2012], quoting CPLR 302 [a] [1]). In determining whether long-arm jurisdiction has been acquired over a nondomiciliary, the court must undertake a two-part inquiry: "[f]irst, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum [s]tate by either transacting business in New York or contracting to supply goods or services in New York. Second, the claim must arise from that business transaction or from the contract to supply goods or services" (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d 292, 297 [2017] [internal quotation marks and citations omitted]). Ultimately, as the party seeking to assert jurisdiction, it is the plaintiff's burden to demonstrate a proper basis for long-arm jurisdiction (see Gottlieb v Merrigan, 170 AD3d 1316, 1317 [2019], lv denied 33 NY3d 908 [2019]; Andrew Greenberg, Inc. v Sirtech Can., Ltd., 79 AD3d 1419, 1420 [2010[*4]]).
Here, we do not dispute the majority's recitation of facts. Rather, with respect to the first prong of the jurisdictional analysis, contrary to the majority's holding, we find that defendant's contacts adequately demonstrated that it purposefully availed itself of the privilege of conducting activities in New York by transacting business here. Although the two unmanned aerial vehicles (hereinafter UAVs) that were purchased by the State University of New York at Stony Brook (hereinafter SUNY Stony Brook) were shipped to Madagascar, SUNY Stony Brook was in New York, the purchase price was billed to New York and the payment was made from New York. In addition, numerous email and telephone communications between a professor at SUNY Stony Brook (hereinafter the professor) and defendant's chief executive officer (hereinafter the CEO) — which grew to include communications between other staff members of SUNY Stony Brook and defendant — evolved between 2015 and 2016 to include negotiations regarding, among other things, SUNY Stony Brook's UAV specifications and culminated in SUNY Stone Brook's purchase of two UAVs from defendant in September 2016 (see C. Mahendra [NY], LLC v National Gold & Diamond Ctr., Inc., 125 AD3d 454, 456 [2015]). After the two UAVs proved unsatisfactory, the CEO visited New York in September 2017 and met with the professor during which meeting the CEO agreed to terms with the professor that would not only resolve their present sales dispute, but further sought to repair and secure their continuing business relationship (see Stardust Dance Prods., Ltd. v Cruise Groups Intl., Inc., 63 AD3d 1262, 1264 [2009]). The emails between the professor and the CEO both leading up to and following this in-person meeting demonstrate that the initial September 2016 sales transaction was not simply a "one-time occurrence" but was contemplated as part of an ongoing business relationship between SUNY Stony Brook and defendant that was intended to blossom into further business relations involving, among other things, expanded UAV sales and applications, ongoing UAV technical support and flight training services. Although the relationship between SUNY Stony Brook and defendant ended without the execution of any additional contracts, in our opinion, defendant's contacts in New York were nevertheless purposefully intended to create a continuing business relationship and, therefore, the first prong of obtaining long-arm jurisdiction was established (see Fischbarg v Doucet, 9 NY3d 375, 380 [2007]; Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71-72 [2006], cert denied 549 US 1095 [2006]; C. Mahendra [NY], LLC v National Gold & Diamond Ctr., Inc., 125 AD3d at 457; Grimaldi v Guinn, 72 AD3d 37, 51-52 [2010]; Stardust Dance Prods., Ltd. v Cruise Groups Intl., Inc., 63 AD3d at 1264).
With regard to the second prong, given that defendant's contacts in this state were directly and substantially related to the sale of the two UAVs that [*5]are the subject of this litigation, coupled with defendant's additional efforts to resolve its sales dispute with SUNY Stony Brook and continue their ongoing business relationship, plaintiff adequately demonstrated that there was a substantial relationship between defendant's New York activities and the subject business transaction to satisfy this prong (see generally D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 298; Rushaid v Pictet & Cie, 28 NY3d 316, 329 [2016]). Finally, having cultivated an ongoing business relationship with SUNY Stony Brook that was aimed at mutually raising the profile of both SUNY Stony Brook's Global Health Institute and defendant's business portfolio under the auspices that it would transform into a "large, extensive, and integrated [drone delivery] network," defendant cannot reasonably claim that, given the nature of its contacts and the resulting business relationship, it did not anticipate being haled into a New York court in the event disputes arose between the parties such that the exercise of jurisdiction comports with federal due process and does not "offend traditional notions of fair play and substantial justice" (International Shoe Co. v Washington, 326 US 310, 316 [1945] [internal quotation marks and citations omitted]). Accordingly, we would reverse the order of Supreme Court and deny the motion.
Pritzker, J., concurs.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The agreement between the parties does not appear to have been reached through plaintiff's bidding and contractual process (see generally State Finance Law § 163).

Footnote 2: Supreme Court's order also found that it could not exercise general jurisdiction over defendant (see CPLR 301). Although plaintiff does not appear to challenge that part of Supreme Court's order, it bears noting that the court correctly found that defendant is not subject to general jurisdiction in New York, as "the paradigm bases for general jurisdiction" — the principal place of business and state of incorporation — lay in Michigan and Delaware, respectively (Daimler AG v Bauman, 571 US 117, 137 [2014] [internal quotation marks, brackets, ellipsis and citation omitted]; see Aybar v Aybar, 169 AD3d 137, 144 [2019], lv granted 34 NY3d 905 [2019]). Nor are defendant's contacts with New York "so substantial and of such a nature as to render it at home" in New York (Daimler AG v Bauman, 571 US at 139 n 19; see David D. Siegel & Patrick M. Connors, NY Prac § 82 at 168 [6th ed 2018]).